**STATE of Oklahoma, ex rel. OKLAHOMA BAR ASSOCIATION, Complainant,**

v.

**Clifford BRIERY, II, Respondent.**

SCBD No. 4072.
OBAD No. 1189.

Supreme Court of Oklahoma.

March 26, 1996.

Dissenting Opinion by Justice Opala as Amended April 12, 1996.

Mike Speegle, Assistant General Counsel, Oklahoma Bar Association, Oklahoma City, for Complainant.

Robert Perrine, Jr., Norman, for Respondent.

HARGRAVE, Justice:

The Respondent, Clifford Briery II, OBA # 1122, and the Oklahoma Bar Association entered into a stipulated statement of facts and conclusions of law and agreed recommendation for discipline. The Trial Panel of the Professional Responsibility Tribunal approved the stipulated facts and legal conclusions, but did not accept the agreed recommendation for discipline, and made a different recommendation to this Court. The stipulated facts and conclusions of law are set out below.

### COUNT I: *Richerson*

John Richerson hired Respondent, paying him an attorney fee and an additional $738.00 for payment of fines and court costs on traffic charges for which Richerson had been arrested. The Respondent did not appear in court on the scheduled date and did not pay Mr. Richerson's fines and costs as he had promised, but instead converted the $738.00 to his own use and benefit. As a result, a bench warrant was issued for Mr. Richerson's arrest.

The Respondent deposited the funds in his attorney trust account and used those funds

to pay personal bills from the trust account. These actions occurred in April, July and August of 1993. It is stipulated that these actions constituted conversion and commingling of client funds in violation of Rules 8.4(c), 1.15, 1.1 and 1.3 of the Oklahoma Rules of Professional Conduct, and Rule 1.4(b) of the Rules Governing Disciplinary Proceedings.[1]

### COUNT II—Judkins

Leon Judkins was arrested in July, 1993 for D.U.I. in Cleveland county. He hired Respondent and paid him approximately $300.00 in attorney fees. The Respondent failed to take any action in the matter, failed to appear in court and failed to notify the client that nothing had been done. As a result, a bench warrant was issued for Mr. Judkins' arrest and he had to hire another lawyer to complete the case. It is stipulated that Respondent's actions violated Rules 8.4(c), 1.5, 1.1, 1.3 and 1.4 of the Oklahoma Rules of Professional Conduct.[2]

### COUNT III

Count III stipulates that before, during and after the period from April to October, 1993, Respondent misused his attorney trust account by: a) writing checks out of the account for personal bills, expenses and routine purchases; b) writing checks for personal expenses when there were insufficient funds in the account to cover the checks; c)

commingling his own funds with client trust funds and converting client trust funds to his own use and benefit; and d) routinely depositing funds into the account that did not have any characteristics of trust funds or client funds. It is stipulated that these actions violated Rules 1.15 and 8.4(c) of the Oklahoma Rules of Professional Conduct.

### MITIGATION

The parties stipulated that Respondent was suffering from excessive abuse of alcohol during the times set forth to an extent that it impaired his ability to conduct his affairs efficiently and properly in the practice of law. The Respondent recognized his problem with alcohol and took affirmative steps toward productive rehabilitation. The Respondent was experiencing extreme personal, financial and family problems during the times set forth. The Respondent has resolved his personal, financial and family problems to an extent that they no longer impair his ability to function. Respondent has restored to all aggrieved complaining parties the money paid to him for his legal services.

### ENHANCEMENT

Although not a part of the stipulation between the parties, the Bar's amended complaint reflected that Respondent was suspended by this court for seventeen months on November 12, 1986, in OBAD # 710, SCBD # 3301, *State ex rel. Oklahoma Bar*

---

1. Rule 1.1 of the Oklahoma Rules of Professional Conduct provides that a lawyer shall provide competent representation to a client, which representation requires the legal knowledge, skill, thoroughness, and preparation reasonably necessary for the representation.

 Rule 1.3 provides that a lawyer shall act with reasonable diligence and promptness in representing a client.

 Rule 1.15 deals with safekeeping of property. Paragraph (a) provides:

 "A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate form the lawyer's own property. Funds shall be kept in a separate account maintained in the state where the lawyer's office is situated ... Complete records of such account funds and other property shall be kept by the lawyer ..."

 Rule 8.4(c) provides that it is professional misconduct for a lawyer to engage in conduct in-

volving dishonesty, fraud, deceit or misrepresentation.

 Rule 1.4(b), Rules Governing Disciplinary Procedure, provides:

 "Where money or other property has been entrusted to any attorney for a specific purpose, he must apply it to that purpose ..."

2. Rule 1.4, Oklahoma Rules of Professional Conduct, provides:

 "(a) A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.

 (b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation."

 Rule 1.5 deals with fees charged by a lawyer and provides that such fees shall be reasonable.

*Association v. Briery,* 57 OBJ 2830 (Nov. 16, 1986). Respondent was reinstated after complying with Rule 11, Rules Governing Disciplinary Proceedings after the suspension had expired.

## DISCUSSION

The parties agreed as a proposed recommendation for discipline that Respondent's license to practice law should be suspended for a period of two years and one day. As a result, Respondent would be required to comply with Rule 11, Rules Governing Disciplinary Proceedings, in order to be reinstated after the suspension period ended. The Trial Panel of the Professional Responsibility Commission recommended that the Respondent be suspended from the practice of law for a period of three (3) years and recommended additionally that the Respondent attend Alcoholics Anonymous twice a week during the period of suspension and participate in the Lawyers Helping Lawyers program. The Trial Panel further recommends that the Respondent be required to submit documentation of his participation in and compliance with these programs prior to seeking readmission. They recommend that Respondent be required to follow the provisions of Rules 11.1 through 11.7 of the R.G.D.P. for seeking readmission to the Bar and that Respondent continue to comply with mandatory continuing legal education requirements.

The Bar's brief to this Court asks that we follow the agreed recommendation of two years and one day. They argue that Respondent's problem appears to be the repeated abuse of alcohol and severe neglect of client matters because of the abuse. Although the allegations involve misuse of clients' funds, they observe that Respondent did not seek to intentionally convert client funds. They point out that both counts involving conversion of client funds occurred just prior to or at the time Respondent was an inpatient at an alcohol treatment center. When Respondent came back from the treatment center, he took care of the missing funds and the missed court appearances. The Bar relies on the case of *State of Oklahoma ex rel. Oklahoma Bar Association v. Meek,* 895 P.2d 692 (Okla.1994) as authority for its recommendation. The Bar considers Respondent's actions in the case at bar to constitute "simple conversion" as defined in *Meek.* The Bar believes that there has been no intentional infliction of grave economic harm in the mishandling of client funds in this case. They note that Respondent appears to have been sober for a substantial period of time since leaving inpatient treatment in Arizona in 1994. They advise that Respondent is sober now and has been doing work for other lawyers while winding up his practice. They remind this Court that if we follow the agreed recommendation for discipline, Respondent will have to comply with Rule 11, R.G.D.P. for reinstatement and will have to be reexamined for fitness to practice law at that time.

The Respondent testified before the Trial Panel that he has not taken any new cases since his return from the alcohol treatment center and that he has been winding up his existing cases. He testified that before leaving for the treatment center in February, 1994, he turned over all of his misdemeanor criminal defendant clients to an attorney in Norman for handling. Respondent also contacted the chief misdemeanor judge in Cleveland county and the chief presiding district judge in Cleveland county explaining the circumstances and asking for any cooperation that might be given to his clients as a result of their being transferred to a new attorney. He also contacted every bail bondsman with whom he had ties in order to let them know the situation. He testified that he tried to personally notify as many of the clients as possible.

The two cases that resulted in Counts I and II were included in the cases that were transferred to the Norman attorney. It is not clear from the testimony why these cases were not handled. Respondent testified that although he had allocated to each transferred client the monies paid to him, Mr. Richerson was not allocated in the proper amount on the list given to the Norman attorney, which resulted in Mr. Richerson's matter not being handled. Upon returning from the alcohol treatment center, Respondent refunded the additional money to Mr. Richerson in the

amount of $338.00. Respondent testified that Mr. Judkins was on a list of bench warrants issued and that he was bonded out by one of the bail bondsmen that Respondent had called. The Bar reiterated that clients have been reimbursed by Respondent.

In *State ex rel. Oklahoma Bar Association v. Meek*, 895 P.2d at 698, we explained the three levels of culpability involved when evaluating mishandling of client funds: 1) commingling, which takes place when client monies are combined with the attorney's personal funds; 2) simple conversion, which occurs when a lawyer applies a client's money to a purpose other than that for which it was entrusted to the attorney; 3) misappropriation, the most serious infraction, which involves theft by conversion or otherwise when an attorney purposefully deprives a client of money by way of deceit and fraud. As in *Meek*, we found the evidence insufficient to support a finding of misappropriation and imposed discipline of suspension for one year. See also, *State ex rel. Oklahoma Bar Association v. Cummings*, 863 P.2d 1164 (Okla.1993) (one-year suspension) and *State ex rel. Oklahoma Bar Association v. Farrant*, 867 P.2d 1279 (Okla.1994) (one-year suspension followed by probation).

The Respondent has testified that his problems, both in the case at bar and in his previous disciplinary action, arose from his alcohol abuse. Mr. Briery testified that he had maintained a period of sobriety after the last discipline until about 1992. He testified that since his inpatient treatment in Arizona he has been in Alcoholics Anonymous and that he plans to join Lawyers Helping Lawyers. Respondent expressed remorse over his conduct.

Because Respondent's problems have stemmed from alcohol abuse, sobriety is essential for his rehabilitation. Any application for reinstatement filed by Respondent will be conditioned upon his continued sobriety. Accordingly, we find it unnecessary to *order* the Respondent to participate in the Alcoholics Anonymous or Lawyers Helping Lawyers programs. These are matters that are Mr.

Briery's responsibility if he desires to regain membership in the Oklahoma Bar Association.

 Our review in lawyer disciplinary matters is *de novo*. *State ex rel. Oklahoma Bar Association v. Stubblefield*, 766 P.2d 979, 982 (Okla.1988). Having reviewed the record before us and accepting the stipulated facts and conclusions of law entered into between the parties and accepted by the Trial Panel, we find that the charges against Respondent have been established by clear and convincing evidence. We adopt the recommendation of the Oklahoma Bar Association that Respondent be suspended from the practice of law for a period of two years and one day from the date this opinion becomes final. Respondent is further ordered to pay the costs of this proceeding in the amount of $511.08, within thirty days of the date of this opinion becomes final.

**RESPONDENT SUSPENDED; COSTS IMPOSED.**

ALMA WILSON, C.J., KAUGER, V.C.J., and HODGES, LAVENDER, SUMMERS and WATT, JJ., concur.

SIMMS, J., concurs in part; dissents in part and would impose more severe discipline.

OPALA, J., dissents in part by separate opinion.

OPALA, Justice, dissenting in part.

When overfocused (which occurs all-too frequently), collegiality-bred concerns for some residue of salvageable characteristics in offending legal practitioners—who, like this respondent, are rightly to be viewed as *deeply scarred*[1] rather than *purely evil*—tend to bring about a management style of discipline enforcement that is best described as a *revolving-door passageway* for *de* licensed offenders. These persons are *first* mustered out of the practice and *then* quickly brought right back into it. Readmission quests that follow suspensions (for a period of two years

---

1. By "deeply scarred" I mean that these persons have been affected by substance abuse or by destructive psychic forces.

and one day or longer) have met with an extraordinarily high incidence of success. Our current pattern of dealing with lawyer recidivism, which I cannot countenance, brings disrepute upon the legal profession and should inspire a search for some improvement in the exercise of this court's stewardship responsibility.

I would today avoid excessive preoccupation with rescue concerns and err on the side of *public safety by* ordering the respondent disbarred. This would prevent him from launching a reinstatement effort for a period of five years. More importantly, the solution I propose would enable the Bar better to assess respondent's rehabilitation progress and his fitness for re-entry into the practice. Its evaluation of the respondent's eligibility for reinstatement would be extended to cover an appreciably longer period than that allowed by today's suspension for two years and one day.