2003 OK 101

**STATE of Oklahoma, ex rel., OKLAHOMA BAR ASSOCIATION, Complainant,**

v.

**Michael I. ASTON, Respondent.**

**SCBD No. 4810.**
**OBAD No. 1573.**

Supreme Court of Oklahoma.

Dec. 2, 2003.

---

Nathan A. Lockhart, Assistant General Counsel, Oklahoma Bar Association, Oklahoma City, for Complainant.

Michael I. Aston, Tulsa, Pro se.

SUMMERS, J.

¶ 1 This proceeding was brought by the Bar Association to discipline Respondent, Michael Aston, for his drug-related conduct that resulted in a felony conviction and two misdemeanor convictions.

¶ 2 The Bar requests that Aston be suspended from the practice of law for a period of six months with a following probation for two years. The Trial Panel also recommended a six-month suspension with a two-year probation. Aston argues that suspension would cause an economic hardship, and that protection of the public is afforded by random drug testing during his probation.

¶ 3 On October 2, 2002, in Cause No. CF–2002–232, District Court of Tulsa County, Aston pled guilty to the crime of Possession of Controlled Drug, Schedule II (methamphetamine). He received a deferred sentence of three years, and ten days in the Tulsa County Jail beginning October 3, 2002. He was also sentenced to eighty hours of community service. Aston also entered pleas to misdemeanor charges of possession of drug paraphernalia and possession of a Controlled Drug, Schedule IV, marijuana. He was ordered to pay fines and costs in the amount of $1,826.50. He pays $100.00 per month on the fines and costs, and an additional $60.00 per month in probation fees.

¶ 4 Aston apologized to the members of the Trial Panel, expressed contrition for his actions, explained that he had been married for a year, had an infant son, and was trying to "grow up" and be an adult. Aston completed a course of substance abuse treatment.

¶ 5 He explained the history of his methamphetamine and marijuana use. He explained that he failed a urine screen one time during the year because of his use of marijuana. After this drug test Aston was required attend a class, and receive a warning that an additional test positive for drug use would result in incarceration. He stated that after this he increased his counseling. At the time of the hearing he was attending counseling sessions twice a week, and church meetings.

¶ 6 A lawyer testified on Aston's proficiency in practicing law, and gave an opinion that Aston is a good lawyer. However, he did not have specific information relating to Aston's rehabilitation, except that Aston had strong family support for rehabilitation. Aston's minister sent a letter to the Bar Association, and stated that Aston's behavior had improved in the last year.

¶ 7 Aston called his probation officer to testify. He asked the probation officer to identify himself to the trial panel, and then turned the witness over to the panel for questioning. The probation officer testified

that Aston never misses an appointment, and is timely paying his fees. He said that Aston had no problem during the probation, except one positive drug test. The program authorizes a sanction of incarceration should Aston receive a second positive test for prohibited drugs. A third positive test would result in an appearance before the sentencing judge for a determination whether Aston's probation should be revoked. He testified that one relapse is "very, very common" for individuals on probation for drug offenses. He also testified that Aston would receive additional treatment because of the relapse, a "relapse intervention program."

¶8 The probation officer testified that a condition of Aston's probation is that he be employed full time. He stated that Aston will need to find other employment if he is not working as a lawyer. The officer was asked to speculate on Aston's success in the program. He stated that "I don't look into the future," but "he [Aston] knows now that he's at the crossroads of where he's going to go to jail if something happens again," and "he's sincere about not wanting to mess up," and "I think he's probably going to be okay." The officer also said that Aston had "never given me any grief about coming to his house and looking around or popping in on him unexpectedly ... I think he's trying to do what he can right now."

¶9 Counsel for the Bar Association strongly recommended that Aston be required to participate in Lawyers Helping Lawyers[1] and a probationary period that coincided with this probation in the criminal proceeding. However, counsel for the Bar expressed concern on how a suspension could have a nega-

tive impact upon Aston's rehabilitation. Aston stated that he did not know how he would support his family and satisfy the employment requirement of his probation if his license to practice law was suspended. He stated that he would do what was necessary to support his family and satisfy his probation requirements and any requirements imposed by this Court.

[1–3] ¶10 The trial panel determined that Aston's conduct constituted a violation of Rule 8.4(b) of the Rules of Professional Conduct,[2] and a violation of Rule 1.3 of the Rules Governing Disciplinary Proceedings.[3] We exercise exclusive original jurisdiction in lawyer discipline proceedings, and use a *de novo* review of the record before us. We treat the findings and recommendations of the trial panel as merely advisory when we decide whether professional misconduct has occurred and the appropriate discipline to impose. *State ex rel. Oklahoma Bar Association v. Taylor*, 2003 OK 56, ¶2, 71 P.3d 18, 21; *State ex rel. Oklahoma Bar Association v. Giger*, 2001 OK 96, ¶5, 37 P.3d 856, 860. We review the evidence to determine if the allegations of misconduct are established by clear and convincing evidence. *State ex rel. Oklahoma Bar Association v. Bolusky*, 2001 OK 26, ¶7, 23 P.3d 268, 272.

[4] ¶11 Rule 8.4(b) states that it is professional misconduct for a lawyer to commit a criminal act that reflects adversely on that person's fitness as a lawyer. We have said that the phrase "fitness to practice law" encompasses more than an absence of detriment to specific clients. In *State ex rel. Oklahoma Bar Association v. Willis*, 1993

---

1. The Bar's Lawyers Helping Lawyers Committee is a program designed to (a) assist, through direct contact, lawyers impaired by substance abuse, depression, stress and other practice—related malaise and (b) assure the public of competent legal representation. *State ex rel. Oklahoma Bar Association v. Giger*, 2001 OK 96, n. 12, 37 P.3d 856, 860.

2. 5 O.S.2001, Ch. 1, App. 3 A, Rule 8.4(b)
   Rule 8.4. Misconduct
   It is professional misconduct for a lawyer to:
   ...
   (b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects; ....

3. 5 O.S.2001, Ch.1, App. 1 A, Rules Governing Disciplinary Proceedings, Rule1.3 states:

   "The commission by any lawyer of any act contrary to prescribed standards of conduct, whether in the course of his professional capacity, or otherwise, which act would reasonably be found to bring discredit upon the legal profession, shall be grounds for disciplinary action, whether or not the act is a felony or misdemeanor, or a crime at all. Conviction in a criminal proceeding is not a condition precedent to the imposition of discipline."

OK 138, 863 P.2d 1211, we explained that conviction for possession of cocaine demonstrated an unfitness to practice law.

In *State ex rel. Oklahoma Bar Association v. Arnett*, 815 P.2d 170 (Okla.1991), *the respondent entered a plea of guilty to the charge of possession of a controlled and dangerous substance (cocaine) which did not involve conduct in an attorney-client relationship or in the performance or non-performance of any obligation while acting on behalf of any client.* The parties had stipulated that several witnesses would testify that the respondent was fit to practice law. *We stated that Arnett's conduct violated the provisions of Rule 8.4(b) of the Rules of Professional Conduct in that he committed a criminal act that reflected adversely on his fitness to practice law.* We imposed a ninety day suspension and a two-year probationary period in that case, which did not involve elements of fraud or misrepresentation.

*State ex rel. Oklahoma Bar Association v. Willis*, 863 P.2d at 1214, (emphasis added).

¶ 12 Rule 1.3 states that a lawyer may be disciplined when he or she commits and act that is contrary to the prescribed standards of conduct and would reasonably be found to bring discredit upon the legal profession. In 1999 we said that three convictions (two misdemeanors and a felony) for driving while under the influence of alcohol showed a pattern of repeated offenses indicating indifference to legal obligations. *State ex rel. Oklahoma Bar Association v. Doris*, 1999 OK 94, 991 P.2d 1015, 1026. Also in that year, in *State ex rel. Oklahoma Bar Association v. Blackburn*, 1999 OK 17, 976 P.2d 551, we said the following:

Felony drug offenses are of great concern to this Court, both because of their criminal nature and because addiction prevents an attorney from adequately caring for the legal affairs of his clients, putting the public in danger. *See State ex rel. Oklahoma Bar Ass'n v. Denton*, 1979 OK 116, 598 P.2d 663, 665 (deferred sentence

for possession of marijuana is a crime and warrants discipline); *State ex rel. Oklahoma Bar Ass'n v. Bradley*, 1987 OK 78, 746 P.2d 1130, 1133 (evidence of a nolo contendere plea and receipt of a deferred sentence was admissible and relevant in disciplinary proceeding relating to attorney's use of client funds); *State ex rel. Oklahoma Bar Ass'n v. Hogue*, 1995 OK 64, 898 P.2d 153 (attorney's guilty pleas for drug and alcohol related offenses were cause for six month suspension).

*Id.* 1999 OK 17, at ¶ 12, 976 P.2d at 554.

We have said that substance abuse is incompatible with the practice of law. *State ex rel. Oklahoma Bar Association v. Giger*, 2001 OK 96, ¶ 21, 37 P.3d 856, 864. *See e.g., Matter of Reinstatement of Pierce*, 1996 OK 65, 919 P.2d 422, 426, (we discussed the problem and denied a petition for reinstatement based, in part, on a lawyer's lack of evidence showing rehabilitation). Our opinions in *Willis, Arnett, Doris, Blackburn,* and others, predate Aston's conduct examined in this proceeding. Aston, as have all the members of the Bar, received notice that conduct resulting in convictions for felony drug offenses is not acceptable for a member of the Bar. The evidence is clear and convincing that Aston's convictions for possession of methamphetamine, marijuana, and drug paraphernalia show violations of both Rule 1.3 and 8.4(b).

■ ¶ 13 Prior discipline for professional misconduct is used to enhance discipline. *State ex rel. Oklahoma Bar Association v. Mothershed*, 2003 OK 34, ¶ 42, 66 P.3d 420, 428. When enhancing discipline the Court has considered a previous private reprimand from the Professional Responsibility Commission when the facts supporting that reprimand are made part of the record. *State ex rel. Oklahoma Bar Association v. Vincent*, 2002 OK 40, ¶ 20, 48 P.3d 797, 801; *State ex rel. Oklahoma Bar Association v. Gasaway*, 1993 OK 133, 863 P.2d 1189, 1205.[4]

---

4. 5 O.S.2001, Ch.1, App. 1 A, Rules Governing Disciplinary Proceedings, Rule 6.2 states:
"The complaint shall set forth the specific facts constituting the alleged misconduct, and if prior conduct resulting in discipline, or evidence from prior investigations, is relied upon to enhance discipline, the prior acts or conduct relied upon shall be set forth."

¶ 14 Aston received a private reprimand by the Professional Responsibility Commission in January 2001 for his pleas of no contest to misdemeanor charges of possession of marijuana and being drunk in public. These charges followed an arrest by the Oklahoma City Police Department. The trial panel report also details that in a separate circumstance in August 2002, Aston received a suspended sentence of one year after pleading no contest to possession of marijuana and actual physical control of a motor vehicle while intoxicated.

¶ 15 Mitigating factors when imposing discipline include a respondent's cooperation with the Bar's investigation and prosecution of the matter, whether a respondent accepts responsibility for the misconduct, and whether clients did not suffer adversely. *State ex rel. Oklahoma Bar Association v. Parsons,* 2002 OK 72, ¶ 17, 57 P.3d 865, 869; *State ex rel. Oklahoma Bar Association v. McGee,* 2002 OK 32, ¶¶ 22–26, 48 P.3d 787, 793. Counsel for the Bar said that Aston had cooperated in every part of the disciplinary process.

It's important to note along with that punishment, that Mr. Aston has been very cooperative throughout, from the time we learned of his latest arrest until today, he's been cooperative. And we've gotten through this fairly quickly. There was really no arguing about the stipulations. He's met with Dan and I here at the Bar, and we've gone over a number of things, talked about the problems that he's had.

Counsel for the Bar also noted that Aston had not, except for the previous private reprimand, had any problems with the Bar Association.

It's important to know, too, that Mr. Aston hasn't had any other problems with the bar. As far as his legal work and legal competency and things of that nature.

Counsel for the Bar also explained that in cases involving drug use by lawyers the Bar normally discovered neglect of clients and their cases by those lawyers. However, the Bar did not discover any of those problems in this case. Further, Aston's apologies to the trial panel coupled with his past representations to his probation officer show that he assumed responsibility for his actions. In mitigation, Aston fully cooperated with the Bar, assumed responsibility for his acts, and no clients were damaged by his conduct.

¶ 16 In *State ex rel. Oklahoma Bar Association v. Giger,* 2001 OK 96, 37 P.3d 856, the respondent was disciplined with a suspension from the practice of law for one year and a two-year period of supervision. Giger violated rules of professional conduct in addition to those violated by Aston. However, Giger had not received a prior reprimand as had Aston.

¶ 17 Aston's deferred sentence requires supervision until October 3, 2005, at which time he is to appear before the District Court. We agree with the trial panel that Aston's conduct shows that supervision is needed. We place Aston on two years of conditioned supervision under the auspices of a member of the Lawyers Helping Lawyers Committee. During this time, Aston shall be required to: (1) abide by the Rules of Professional Conduct, (2) cooperate with and participate in the Lawyers Helping Lawyers Committee, (3) refrain from the use or possession of any illegal drug, and (4) remain unimpaired from the use of any legal substance, whether prescribed or not, that interferes with his ability to function as a lawyer. *See Giger,* at ¶ 23. We further order that a term of his conditioned supervision is that he refrain from engaging in conduct that would cause revocation of his deferred sentence.

¶ 18 As in *Giger, supra,* if at any time during the two-year period of conditioned supervision the General Counsel of the Oklahoma Bar Association concludes that Aston has violated any of the terms of his supervision, the Bar may file an application with the original trial panel to impose discipline for that violation. Notice of the filing of the application shall be sent to Aston by certified mail. The trial panel shall then schedule a hearing on the application and make a determination as to whether Aston has violated the terms of his supervision. If the trial panel determines that no violation has occurred, the period of conditioned supervision shall continue. If the trial panel finds a violation did occur, then a record of the proceedings sufficient for our de novo review

together with a recommendation for an appropriate discipline shall be forwarded to this court. *See Giger,* at ¶ 24.

¶ 19 Aston states that he now knows that his past conduct must be changed, and that a suspension is not necessary. Aston received a private reprimand from the Professional Responsibility Commission and this expression of professional disapproval was apparently insufficient to cause a change in his conduct. Considering the mitigating factors and comparing this misconduct with similar disciplinary proceedings, we conclude that the appropriate period of suspension is six months.

¶ 20 The Bar Association filed an application for assessment of costs against Aston in the amount of $500.63. The application is granted, and Aston shall pay the costs within ninety (90) days of the date this opinion is final.

¶ 21 Respondent is suspended from the practice of law for six months and placed under conditioned supervision for two years. The suspension and supervision will commence on the day this opinion becomes final. Respondent is directed to pay the costs as ordered herein within ninety days of the date this opinion becomes final.

¶ 22 OPALA, V.C.J., LAVENDER, KAUGER, BOUDREAU, WINCHESTER, JJ., concur.

¶ 23 WATT, C.J., Dissents.

"I would suspend Respondent for a longer period of time."

¶ 24 HODGES, HARGRAVE, JJ., Dissent.