2006 OK 54

**STATE of Oklahoma, ex rel. OKLAHOMA BAR ASSOCIATION Complainant,**

v.

**James Michael ROGERS, Respondent.**

**SCBD No. 5060.**
**OBAD No. 1657.**

Supreme Court of Oklahoma.

July 5, 2006.

Janis Hubbard, Assistant General Counsel, Oklahoma Bar Association, Oklahoma City, OK, for Complainant.

Gerald J. Lovoi of Tulsa, Oklahoma, for Respondent.

LAVENDER, J.

¶1 Complainant commenced this proceeding pursuant to Rule 6 of the Rules Governing Disciplinary Proceedings (hereinafter

"RGDP"), 5 O.S. ch. 1, app. 1–A., and charged Respondent with violating Rules 8.4(b) and 8.4(c) of the Oklahoma Rules of Professional Conduct (hereinafter "ORPC"), 5 O.S.2001, ch. 1, app. 3–A; and Rule 1.3 of the RGDP on the basis that "Respondent's repeated violations of Oklahoma's legal standards prohibiting driving a motor vehicle while intoxicated on alcohol demonstrates a disregard for the law and an indifference to legal obligations." [1] The Professional Responsibility Tribunal (hereinafter "PRT") determined that Respondent's most recent felony conviction arising out of his November 8, 2003 arrest reflected adversely on his fitness as a lawyer and is contrary to prescribed standards of conduct which can reasonably be found to bring discredit upon the legal profession and recommended suspension for two years and one day. After *de novo* review, we agree with these findings, that discipline is warranted and the appropriate amount of time for suspension is two years and one day.

I

## FACTS AND PROCEDURAL HISTORY

¶ 2 Respondent was admitted to the bar on April 17, 1992. At the time of the hearing before the Professional Responsibility Tribunal, Respondent was 44–years–old. The critical facts in this matter relate to Respondent's criminal history, which, in summary consists of two felony convictions and at least three misdemeanor convictions [2] arising from alcohol-related criminal charges. The record

reveals the following timeline of Respondent's alcohol-related criminal convictions:

1. April, 1992: Respondent was arrested for driving under the influence of alcohol ("DUI"), driving without a seatbelt, failing to stop at a red light, and transportation of beer in an open container. The DUI charge was reduced and Respondent was convicted of impaired driving. Respondent was sentenced to 40 hours of community service, ordered to pay fines, and required to complete DUI school.

2. November, 1994: Respondent was arrested for DUI. Respondent entered a guilty plea to a reduced charge of impaired driving and Respondent was sentenced to perform community service, complete DUI school, serve six months of suspended jail time and pay a fine.

3. July, 1998: Respondent was arrested and convicted of a misdemeanor (upon a plea of guilty) for DUI, sentenced to one-year suspended sentence, ordered to perform 40 hours of community service and fined.

4. December, 2002: Respondent was arrested and convicted (upon a guilty plea) for felony DUI and for the misdemeanor of driving under revocation of driver's license. Respondent received a five year deferred sentence and a concurrent one year suspended sentence. Additionally, Respondent was ordered to perform 80 hours of community service.

5. November, 2003: Respondent was arrested and convicted (upon a guilty plea) [3] for felony DUI alcohol-second of-

---

1. Amended Complaint at ¶ 20.

2. The record also includes evidence of a conviction for drunkenness in May of 1994, for which he was assessed a fine and costs, as well as a conviction for trespassing in July of 1997, also for which he was assessed a fine and costs. This criminal record information is listed in a Pre–Sentence Investigation Report (listed as Complainant's Exhibit # 32 to Complainant's trial exhibits), which was prepared by a case manager for the Tulsa District Community Corrections and filed on July 8, 2003 in the criminal case arising out of Respondent's DUI arrest in December, 2002. The parties in the instant matter do not list these convictions, nor does the Complainant appear to rely on them in support of the disciplinary charges.

3. In the Findings of Fact–Acceptance of Plea document filed in the Tulsa County District Court (listed as Complainant's Exhibit # 9E to Complainant's trial exhibits), Respondent stated the factual basis for his guilty plea as follows: "In Tulsa County I drove an automobile while intoxicated, caused a wreck with property damage, left the scene, and while my license suspended, [sic]." Although the record reflects the November, 2003 felony conviction was actually his second felony DUI conviction, the Findings of Fact document indicates Respondent's representation therein that this was the first felony charge and that he entered this guilty plea after "no prior felony convictions."

fense[4] and two misdemeanor counts for leaving the scene of an accident with damage to vehicle and another for driving under revocation of driver's license. Respondent was sentenced to five years on the felony conviction and one year on each of the misdemeanor convictions with all three counts to run concurrently.

¶ 3 Upon Respondent's arrest in connection with the November, 2003 incident, a motion to accelerate deferred judgment and sentence was filed in the Tulsa County District Court and the Respondent's sentences in the two felony matters were accelerated, resulting in Respondent's incarceration with the Oklahoma Department of Corrections from April 4, 2004 until his release from prison on March 2, 2005. The record reflects Respondent is on probation currently and will remain on probation until March 1, 2008. The conditions of Respondent's probation are substance abuse evaluation and the installation of an ignition interlock device on any vehicle Respondent will drive. Additionally Respondent is required to successfully complete an outpatient substance abuse counseling program as well as attend anger management and "criminal sentiments" groups.

¶ 4 The evidence reflects that at the time of the hearing before the Professional Responsibility Tribunal, Respondent was in good standing with his probation and parole officer. In the event Respondent violates the conditions of his probation, a violation report will be submitted to the district court and to the district attorney's office with recommendations ranging from no sanctions to incarceration up to the remainder of his original five-year sentence.

¶ 5 Respondent has admitted he has a substance abuse problem.[5] Respondent received in-patient treatment at the Narconon Arrowhead facility for alcohol dependency after his motor vehicle accident/ felony DUI arrest in November, 2003. Respondent was in-patient at Narconon from December 1, 2003 through March 3, 2004. He was thereafter taken into Department of Corrections custody for incarceration on April 5, 2004. Prior to this in-patient treatment, the record reflects Respondent has sporadically attended Alcoholics Anonymous meetings[6], obtained some outpatient treatment therapy from providers at Indian Health Care Resource Center,[7] as well as completed a 72-hour detoxification program.

¶ 6 Complainant initiated its investigation in the instant matter upon its receipt of a letter from Respondent explaining the reasons for Respondent's failure to comply with his 2003 mandatory continuing legal education (hereinafter "MCLE") requirements due to his in-patient substance abuse treatment and incarceration.[8] Although Respon-

4. The record reflects that Respondent refused to submit to breath and/or blood alcohol tests upon both DUI arrests in December, 2002 and November, 2003. Additionally, the record reflects Respondent twice declined to submit to urinalysis testing conducted by the Tulsa District Community Corrections case manager in accordance with the conditions of Respondent's probation arising from his December, 2002 DUI conviction.

5. The record reflects Respondent has admitted to the use of alcohol, marijuana, cocaine, barbiturates, amphetamines, hallucinogens, opiates, and "crystal meth." He describes alcohol as his "drug of choice," that he began drinking as a teenager and drank daily from the time he was 18-years-old until he was 23-years-old. Respondent has had six "relapses" as an adult with the longest period of sobriety being two years.

6. The Pre–Sentence Investigation Report filed in the district court on July 8, 2003 (Complainant's Exhibit # 32) in connection with the December, 2002 DUI arrest indicates Respondent produced no proof of his attendance at Alcoholics Anony-

mous and/or Narcotics Anonymous meetings. This Report further reflects Respondent could not provide proof of income and/or any verification of his employment in support of his claim that he was a self-employed attorney. The Report further notes that a Social Security Wage Earnings Report indicated Respondent has no reported FICA earnings for the past five years and that Respondent had acknowledged his mother financially supported him. (Pre–Sentence Investigation Report at 4). The Report also indicates Respondent showed no remorse for his actions leading to his arrest. (Pre–Sentence Investigation Report at 6).

7. Respondent completed a substance abuse evaluation at the Indian Health Care Resource Center on February 14, 2003 and Respondent was diagnosed as being alcohol dependent.

8. Respondent's letter was directed to the MCLE Commission and appears to have been treated as a request for a waiver of the twelve credit hour educational requirement for 2003. This request

dent was suspended from the Oklahoma Bar Association by Order of this Court on July 1, 2004 due to Respondent's failure to complete his MCLE requirements for 2003 and likewise suspended on June 27, 2005 for noncompliance with MCLE requirements for 2004, Notices of Reinstatement were filed as to both of these suspensions.[9]

¶7 Complainant lists in its Amended Complaint two items for Enhancement of Discipline as follows:

1. Respondent's prior discipline administered by the Professional Responsibility Commission on August 22, 1997 in OBAD # 1321 for neglect in representation of Mary Baugh in a divorce case and failure to respond to the Oklahoma Bar Association.

2. During Respondent's May 15, 1997 deposition testimony in OBAD # 1321, the Respondent admitted to having difficulties with drinking in the past.

¶8 The Joint Stipulations of Fact document (listed as Complainant's Exhibit No. 5 to Complainant's Trial Exhibits), which was signed by the parties, contains Respondent's "graduation from Narconon Arrowhead in Canadian, OK" as an item of mitigation in this matter.

## II

## ANALYSIS

¶9 As a starting point, we note the standard of review applicable in this proceeding is *de novo*, which involves a full exploration of all relevant facts and requires a complete record made before the trial panel. *State ex. rel. Oklahoma Bar Ass'n v. Doris*, 1999 OK 94, 991 P.2d 1015. The record presented here is adequate for *de novo* review. While we examine the findings and recommendations of the Professional Responsibility Tribunal as advisory, the ultimate responsibility for determination of whether misconduct has occurred and what discipline is warranted rests with this Court in the exercise of exclusive original jurisdiction in bar disciplinary matters. *State ex rel. Oklahoma Bar Ass'n v. Todd*, 1992 OK 81, 833 P.2d 260, 262. Finally, "[t]o warrant a finding against the respondent in a contested case, the charge or charges must be established by clear and convincing evidence." Rule 6.12(c) of the RGDP; *State ex rel. Oklahoma Bar Ass'n v. Miskovsky*, 1991 OK 88, 824 P.2d 1090, 1093. Clear and convincing evidence is "that measure or degree of proof which produces in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *State ex rel. Oklahoma Bar Ass'n v. Green*, 1997 OK 39, ¶5, 936 P.2d 947, 949.

¶10 Complainant's Amended Complaint lists one count for which Respondent is charged with violating Rules 8.4(b) and 8.4(c) of the ORPC and Rule 1.3 of the RGDP for his alcohol-related criminal convictions.[10] Rule 8.4 provides in pertinent part as follows:

was denied and Respondent was suspended due to his failure to comply with MCLE requirements prior to the Court's issuance of the Order of suspension on July 1, 2004. Since Respondent was ultimately reinstated after his suspension for non-compliance with MCLE for years 2003 and 2004, a reasonable inference from the record is that Respondent completed his outstanding MCLE requirements and paid the requisite late fees and reinstatement fees.

9. See SCBD–4929, indicating Respondent's Notice of Reinstatement filed on September 2, 2005, ten days prior to entry of the Court's September 12, 2005 Order striking names of the attorneys from the membership rolls of the Oklahoma Bar Association for failure to comply with the MCLE requirements for the year 2003. See SCBD–5076, indicating Respondent's September 2, 2005 Notice of Reinstatement after suspension for noncompliance with MCLE requirements for 2004.

10. Count One of the Amended Complaint specifically notes three alcohol-related criminal convictions (one misdemeanor DUI and two felony DUI convictions) in support of the charges. Specifically, Count One sets forth the criminal convictions (in addition to facts derived from the Affidavit of Probable Cause) arising out of the November, 2003 motor vehicle accident, the felony DUI arising out of that accident, as well as the misdemeanor convictions for leaving the scene of the accident, and driving under revocation of license. Additionally, Count One lists the December, 2002 felony DUI conviction and the 1998 misdemeanor DUI conviction. As noted in the criminal conviction timeline as set forth in the facts and procedural history section of this opinion, the record indicates there are additional alcohol-related convictions and other misdemeanor convictions on Respondent's criminal record for which the Complainant does not set forth in its Amended Complaint or otherwise rely upon in support of the charges here.

It is professional misconduct for a lawyer to: ...

    (b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects;

    (c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;

Rule 1.3 of the RGDP provides as follows:

The commission by any lawyer of any act contrary to prescribed standards of conduct, whether in the course of his professional capacity, or otherwise, which act would reasonably be found to bring discredit upon the legal profession, shall be grounds for disciplinary action, whether or not the act is a felony or misdemeanor, or a crime at all. Conviction in a criminal proceeding is not a condition precedent to the imposition of discipline.

    ■ ¶ 11 At the hearing before the PRT, Respondent presented only his own testimony as evidence in defense of the Complainant's charges. Respondent testified that his driving record "speaks for itself" as to his "persistent pattern of DUI arrests, finally leading to my conviction." (Tr. at 12). While Rule 8.4(b) provides it is professional misconduct for a lawyer to commit a criminal act that reflects adversely on that person's fitness as a lawyer, "[w]e have said 'fitness to practice law' encompasses more than an absence of detriment to specific clients." *State ex rel. Oklahoma Bar Ass'n v. Aston,* 2003 OK 101, ¶ 11, 81 P.3d 676, 678. Additionally, our cases clearly demonstrate our view that substance abuse is incompatible with the practice of law. *Id.* at ¶ 12, 81 P.3d at 679; *In re Pierce,* 1996 OK 65, 919 P.2d 422, 426 (denial of reinstatement upon a lawyer's fail-

ure to produce evidence demonstrating rehabilitation). We emphasize the following pronouncement, which is particularly applicable here:

Although a conviction for driving a motor vehicle while under the influence of intoxicating liquor does not facially show a lawyer's unfitness to practice law [*State ex rel. Oklahoma Bar Ass'n v. Armstrong,* 1990 OK 9, 791 P.2d 815] 'a pattern of repeated offenses, even ones of minor significance when considered separately, can indicate indifference to legal obligation.'

*State ex rel. Oklahoma Bar Ass'n v. Doris,* 1999 OK 94, n. 17, 991 P.2d 1015, 1026 (quoting Rule 8.4, Comment ORPC).

    ¶ 12 Respondent's criminal record indeed speaks for itself in terms of the pattern of repeated alcohol-related offenses over a decade and demonstrates clear and convincing evidence of Respondent's indifference to legal obligation as well as acts that bring discredit upon the legal profession. Respondent's convictions for driving under revocation of driver's license at the time of at least two of the DUI arrests is further indicia of Respondent's indifference to legal obligation.

    ¶ 13 Respondent's conduct and/or comments made in connection with the criminal arrests as well as comments made during his testimony before the PRT [11] reflect his indifference and even disregard to legal obligation. During an interview with a law officer in connection with pre-sentencing investigation concerning Respondent's first felony DUI conviction arising out of the December, 2002 arrest, when asked why he drank alcohol and drove without a valid driver's license on the day of that arrest, Respondent re-

---

**11.** At the hearing before the Professional Responsibility Tribunal, Respondent was asked about the conditions of his probation. (Tr. at 63–66). Respondent explained he was ordered to attend anger management course and a criminal sentiments course as a result of his score on certain tests which were administered during his substance abuse evaluation. (Tr. at 65). Respondent testified concerning the reason he was required to attend criminal sentiments class as follows:

    Q: They just assume you're angry?
    A: Exactly. The criminal sentiments thing comes because they ask you certain questions

about the court, what your attitude is about the courts and—
    Q: They ask questions to really make you mad?
    A: They didn't make me mad, but what it was I showed insufficient deference to the judicial system in the questions. I knew I should have fudged my answers to those, but that score, instead of scoring me as an attorney, that scored me as an [sic] criminal, if you catch my drift. So they wanted me to go to criminal sentiments class to overcome my cynicism. (Tr. at 65).

sponded by describing himself as an "irresponsible idiot."[12] Additionally, during that interview with the law officer, Respondent expressed no remorse for his actions giving rise to his conviction for DUI.[13]

¶ 14 Respondent's conduct in leaving the scene of the November, 2003 motor vehicle accident with property damage (for which he was convicted of a misdemeanor pursuant to 47 O.S.2001, § 10–103[14]) is demonstrative of not only disregard for legal obligation, but rises to the level of dishonesty as his actions demonstrate an attempt to evade another arrest for DUI.[15] Although the record reflects Respondent's knowledge and awareness at the time of the accident that a collision had occurred (and his understanding at that time of the consequences for his driving while intoxicated), instead of providing any identifying information and/or assistance to the driver of the other vehicle involved in the accident, (contrary to statutory duty to give information and render aid pursuant to 47 O.S.2001, § 10–104[16]) he walked and/or drove[17] away from the accident. The victim of the accident reported to the police that Respondent had left the scene and Respondent was eventually apprehended six blocks away. This conduct is the basis for the Complainant's charge that Respondent violated Rule 8.4(c), and we find that under the circumstances of this case, Respondent's conviction for leaving the scene of a motor vehicle accident with property damage, which he caused due to his driving while intoxicated, constitutes clear and convincing evidence of conduct involving dishonesty for which discipline is warranted pursuant to Rule 8.4(c). *See State v. Horton,* 271 S.C. 413, 248 S.E.2d 263, 263–64 (1978) (concluding "[o]ne who leaves the scene of an accident is fraudulently attempting to relieve himself of any liability" and leaving the scene of an auto accident "is contrary to justice, honesty and good

12. Pre–Sentence Investigation Report (Complainant's Exhibit # 32) at 2.

13. Pre–Sentence Investigation Report (Complainant's Exhibit # 32) at 6.

14. 47 O.S.2001, § 10–103 provides in pertinent part as follows:

   The driver of any vehicle involved in an accident resulting only in damage to a vehicle which is driven or attended by any person shall immediately stop such vehicle at the scene of such accident or as close thereto as possible but shall forthwith return to and in every event shall remain at the scene of such accident until he has fulfilled the requirements of Section 10–104 of this title.... Any person failing to stop or comply with said requirements under such circumstances shall be guilty of a misdemeanor and upon conviction thereof shall be punished by a fine not to exceed Five Hundred Dollars ($500.00) or by imprisonment in the county jail for not more than one (1) year, or by both such fine and imprisonment. In addition to the criminal penalties imposed by this section, any person violating the provisions of this section shall be subject to liability for damages in an amount equal to three times the value of the damage caused by the accident. Said damages shall be recoverable in a civil action.... *Id.*

15. Respondent explained his actions giving rise to the November, 2003 motor vehicle accident and DUI conviction in a letter to the Complainant as follows:

   "I might mention that the accident was caused by my vehicle, being completely dry of brake fluid. Also, I might add that the "leaving the scene ...." counts [sic] reflects my effort to walk a block or so to my then-girl friend's place to inform her that I was going to the pen rather than reflecting any effort to evade arrest. As neither of these facts negates any elements of the offense, they don't seem to merit a lot of focus on my past, except as they might pertain to any issues of willfulness."
   (Complainant's Exhibit # 10, Letter of August 5, 2004).

16. 47 O.S.2001, § 10–104 provides in pertinent part as follows:

   A. The driver of any vehicle involved in an accident resulting in injury to or death of any person or damage to any vehicle which is driven or attended by any person *shall give his correct name, address and registration number of the vehicle he is driving,* and shall upon request exhibit his driver license and his security verification form ... to the person struck or the driver or occupant of or person attending any vehicle collided with, and shall render to any person injured in such accident reasonable assistance.... *Id.* (emphasis added).

17. The arresting police officer's handwritten probable cause affidavit indicates Respondent walked away from the scene of the accident. (Complainant's Exhibit # 9B). However, the formal criminal count for the offense filed with the District Court on November 14, 2003 indicates Respondent did not stop his vehicle at the scene of the accident, but rather, continued to drive his vehicle until his apprehension. (Complainant's Exhibit # 9G).

morals."); *People v. Bautista,* 217 Cal.App.3d 1, 265 Cal.Rptr. 661, 665 (Cal.App.1990) (concluding "a person convicted [for leaving the scene of an injury automobile accident] has exhibited an intent and purpose of concealing his identity and also his involvement in an injury-accident."); *see also In re Pistotnik,* 254 Kan. 294, 864 P.2d 1166 (1993) (determining respondent attorney in Kansas bar disciplinary proceeding violated Rules 8.4(b)(d) & (g) of the Kansas Rules of Professional Conduct when he pled no contest to one count of leaving the scene of an automobile accident).

■ ¶ 15 Respondent's prior discipline for professional misconduct may be considered for enhancement of discipline. *See State ex rel. Oklahoma Bar Ass'n v. Aston,* 2003 OK 101, ¶ 13, 81 P.3d 676, 679. Respondent received a private reprimand by the Professional Responsibility Commission in August, 1997 for his neglect in representation of Mary Baugh in a divorce case and failure to respond to the Oklahoma Bar Association. Respondent's deposition was taken in connection with that proceeding in May, 1997, wherein Respondent testified to his difficulties with drinking in the past.[18] Although in his earlier deposition Respondent testified in effect that the reason for the neglect of Ms. Baugh's case was due in part to his hospitalization in 1996 for mental health issues,[19] (Rogers May 15, 1997 Depo. Tr. at 9-10) his more recent testimony before the Professional Responsibility Tribunal in the instant matter included Respondent's acknowledgment that the earlier hospital admission in 1996 was in fact for alcohol-related "detox" treatment. (Tr. at 26). If we were to assume the truth of Respondent's most recent testimony before the PRT, his admission as to the reason for his 1996 hospitalization clearly demonstrates a connection between his drinking problem and his neglect in the rep-

resentation of his client, Ms. Baugh, for which he previously received a private reprimand.

¶ 16 Respondent argues no discipline is warranted here and that our imposition of any discipline would be tantamount to disciplining Respondent for his addiction to alcohol alone. Respondent relies primarily upon *State ex rel. Oklahoma Bar Ass'n v. Armstrong,* 1990 OK 9, 791 P.2d 815 (and the related *Armstrong* case at 1992 OK 79, 848 P.2d 538), in support of his position. We reject Respondent's argument on the basis that *Armstrong,* a Rule 7 summary proceeding, is distinguishable from the instant case.

¶ 17 The pertinent facts of *Armstrong* are as follows: Armstrong had one felony conviction and two prior misdemeanor DUI convictions for arrests spanning a period of three years, Armstrong demonstrated evidence of being sober and a "model of rehabilitation" for over six years, and there were no complaints or allegations of professional misconduct against Armstrong. *Armstrong,* 848 P.2d at 539. Additionally, the Trial Panel's findings of fact in *Armstrong* included the following findings: Armstrong's "reputation in the community had been rehabilitated by his demonstrated commitment to conquering his alcoholism; his reputation as an attorney is one of integrity and professionalism." *Id.*

¶ 18 Here, Respondent's criminal history is more extensive and spans over a much longer period of time. One critical factual distinction is that unlike Respondent in this case, none of Armstrong's DUI convictions arose from a motor vehicle accident, nor did Armstrong leave the scene of any accident. Respondent's long term pattern of criminal misconduct in this case clearly gives rise to professional discipline.

---

18. Although Respondent stipulated to this specific earlier admission in his 1997 deposition, the deposition transcript includes Respondent's additional testimony as follows: "Well, I have had difficulties with drinking in the past. And although, thank God, those haven't been a problem in a long time. I'm rather cautious about it, particularly when I am being deposed." (Rogers May 15, 1997 Depo. Tr. at 17).

19. Respondent testified that he entered the hospital after having "like a serious, serious nervous breakdown, what they used to call a nervous breakdown, during '96, to the point where I couldn't even look up law, or to the point where like if Law and Order came on, I would change channels." (Rogers May 15, 1997 Depo. Tr. at 5). Later during his deposition testimony, Respondent described his mental condition that prompted hospitalization in 1996 as "flipping out." (Rogers May 15, 1997 Depo. Tr. at 10).

¶ 19 While Respondent lists his inpatient treatment in the Narconon facility as a mitigating factor, we cannot consider this evidence weightily in mitigation due to our inability to gauge Respondent's true motivation for entering into the treatment facility, given the timing of his treatment admission while incarceration was imminent. It is open to question whether Respondent sought treatment in recognition of his alcoholism or rather, in an attempt to delay incarceration and/or affect sentencing on the pending felony DUI charge. In order for alcoholism to be weightily considered in mitigation, "the offending attorney must recognize his problem, and seek and cooperate in treatment." *State ex rel. Oklahoma Bar Ass'n v. Doris,* 1999 OK 94,¶ 39, 991 P.2d 1015, 1025 (citation omitted). Respondent has presented no evidence other than his own testimony regarding his commitment to sobriety and participation in substance abuse treatment programs. Additionally, Respondent has offered no evidence regarding his reputation as an attorney. We reject Respondent's attempt to use his alcoholism as a shield against professional discipline where the facts clearly warrant the imposition of discipline.

¶ 20 We are charged with the responsibility to safeguard public interest and to protect the judicial system. *State ex rel. Oklahoma Bar Ass'n v. Adams,* 1995 OK 17, ¶ 18, 895 P.2d 701, 706. It is clear that Respondent's conduct leading to his felony and misdemeanor convictions have brought the bench and bar into disrepute. Additionally, the facts of this case particularly press us to fulfill our primary obligation to protect the public, as the record contains evidence that based upon his criminal history, Respondent is considered a threat to the community.[20] In consideration of the pattern of repeat alcohol-related offenses with the most recent offense resulting in a motor vehicle accident with property damage and Respondent's conviction for felony DUI and misdemeanor conviction for leaving the scene of the motor vehicle accident, we must address this misconduct in a manner that will best protect the public. We further note that discipline imposed in a Rule 6 proceeding is designed to deter the respondent from further offending conduct as well as deter other members of the Bar from similar misconduct. *See State ex rel. Oklahoma Bar Ass'n v. Adams,* 1995 OK 17, ¶ 18, 895 P.2d 701, 706. We therefore determine that suspension for two years and one day is the appropriate discipline. This length of time is particularly appropriate given the number and apparent escalation of severity of the offenses, and is essentially co-extensive with Respondent's supervised probation, which terminates in March of 2008.

¶ 21 Finally, we note that Respondent's sobriety is the key to his rehabilitation. If Respondent chooses to seek reinstatement, "[a]ny application for reinstatement filed by Respondent will be conditioned upon his continued sobriety." *State ex rel. Oklahoma Bar Ass'n v. Briery,* 1996 OK 45, 914 P.2d 1046, 1050. Therefore, we refrain from ordering Respondent's participation in Alcoholics Anonymous or Lawyers Helping Lawyers programs. It is Respondent's responsibility to participate in these programs if he desires to regain membership in the Oklahoma Bar Association. *See id.*

## III

## SUMMARY

¶ 22 In sum, we have reviewed the record before us and accepting the stipulated facts entered into between the parties and accepted by the Professional Responsibility Tribunal, we find that the charges against Respondent have been established by clear and convincing evidence. We adopt the recommendation of the Oklahoma Bar Association and the Professional Responsibility Tribunal that Respondent be suspended from practice of law for a period of two years and one day from the date this opinion becomes final. Respondent is further ordered to pay the costs of this proceeding in the amount of

---

**20.** Judicial Review Hearing Report (filed in the District Court in the November, 2003 criminal case) at 3 (listed as Complainant's Exhibit # 34).

At the hearing before the PRT, Respondent testified that he is not a threat to the community. (Tr. at 39).

$563.47, within thirty days of the date this opinion becomes final.

¶ 23 **RESPONDENT SUSPENDED FROM THE PRACTICE OF LAW FOR TWO YEARS AND ONE DAY; RESPONDENT ORDERED TO PAY COSTS.**

¶ 24 WATT, C.J., WINCHESTER, V.C.J., HARGRAVE, OPALA, EDMONDSON, TAYLOR and COLBERT, JJ., concur.

¶ 25 KAUGER, J., concurring in result.

Although I agree with the discipline imposed, this proceeding should have been brought under Rule 10.