**STATE of Oklahoma, ex rel. OKLA-HOMA BAR ASSOCIATION, Complainant,**

**v.**

**John T. HALL, Respondent.**

**SCBD No. 3460.**

Supreme Court of Oklahoma.

Sept. 19, 1989.

## ORDER IMPOSING DISCIPLINE

This matter is before us for imposition of final discipline. Proposed stipulations of fact and conclusions of law with agreed recommendation of discipline have been entered into by complainant and respondent. The stipulations and recommendation have been accepted and approved by the Trial Panel of the Professional Responsibility Tribunal (PRT). This Court invited briefs from both parties prior to imposition of discipline. Complainant and respondent waived this opportunity.

By virtue of a Second Amended Complaint respondent was charged with four (4) counts of misconduct warranting professional discipline. In the stipulations agreed to by the parties the allegations of Count II were withdrawn. The substance of the stipulations as to the remaining three (3) counts are set forth below.

### COUNT I

1. In February 1984 a client paid respondent one thousand five hundred dollars ($1,500.00) to initiate a lawsuit against an individual for unsatisfactory work performed remodeling the client's home.

2. Respondent filed the lawsuit promptly, but was unprepared when the case came on for trial thirty (30) months later.

3. Respondent further failed to ascertain that an expert witness he had contacted to testify at trial would provide testimony unfavorable to his client. In addition, respondent failed to subpoena others from the job site that would have substantiated his client's claims.

4. Respondent was also unprepared to defend against a counterclaim which resulted in a judgment being taken against his client.

5. The parties stipulated that the above conduct violated DR 6–101(A)(2) and (3) of the Code of Professional Responsibility, 5 O.S.1981, Ch. 1, App. 3 [1] which provide as follows:

(A) A lawyer shall not:

(2) Handle a legal matter without preparation adequate in the circumstances.

(3) Neglect a legal matter entrusted to him.

6. Alleged violations of DR 7–101(A)(1), (2) and (3) contained under Count I in the Second Amended Complaint were agreed to be dismissed via the stipulation.

## COUNT III

1. In August of 1984 a certain individual purchased 262,500 shares of stock in a company through a brokerage firm in Tulsa, Oklahoma.

2. In June of 1985 respondent as attorney for the successor company in which the stock was purchased was trying to merge said successor into another corporate entity.

3. Proxy statements were sent to all of the shareholders, including the owner of the 262,500 mentioned in paragraph 1 above. Said owner returned her negative votes against the merger, the election of officers and all issues at the special stockholders meeting.

4. After receiving such negative vote the president of the brokerage firm that handled the stock purchase in August of 1984 reported to respondent that the owner had changed her mind and wanted to vote yes on the merger.

5. Respondent, knowing the president's questionable credibility, told him that although he was not supposed to change a proxy vote, he would show the vote of the involved owner's shares as "uncertain."

6. Respondent drafted and caused to be filed with the State of Utah, Department of Business Regulation, Division of Corporations and Commercial Code, the results of the vote concerning the merger. Although he accurately reported the total votes that could have been cast in regard to the merger and he correctly reported the other votes for and against the merger, he omitted to report the aforementioned "uncertain" votes.

7. The parties stipulated the above conduct violated DR 1–102(A)(4) which provides as follows:

(A) A lawyer shall not:

(4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.

8. Alleged violations of DR 1–102(A)(3), (5), and (6); DR 7–101(B)(2); DR 7–102(A)(5) and (7), and DR 7–102(B)(1) contained in Count III were agreed to be dismissed via the stipulation.

## COUNT IV

1. The same brokerage firm as involved in Count III was licensed by the Oklahoma Department of Securities and National Association of Securities Dealers (NASD) to deal in securities on behalf of others.

2. NASD had determined that the involved brokerage firm had to maintain a minimum net capital of five thousand dollars ($5,000.00) at all times to stay in business.

3. In initial registrations with NASD the brokerage firm indicated it owned 50,-000 shares of stock in a public company which satisfied the five thousand dollars ($5,000.00) requirement. As proof, NASD

---

**1.** The Code of Professional Responsibility has been superceded by the Oklahoma Rules of Professional Conduct, 5 O.S.Supp.1988, Ch. 1, App.

3–A, Rules 1.1 et seq. The Code was, however, in effect at the time of the involved conduct.

was supplied with a stock certificate dated April 1984.

4. The following year, on or about May 1, 1985, NASD reexamined the brokerage firm. During the reexamination the brokerage firm's president told NASD it still owned the stock. NASD requested to see the stock certificate.

5. On May 1, 1985, pursuant to a promise from the president that the original stock certificate would be forthcoming, respondent wrote a letter to the president stating he was holding the stock certificate, now for 42,000 shares. A copy of the certificate was enclosed with the letter. The letter was written by respondent even though he knew he did not have the original in his possession.

6. The president of the brokerage firm forwarded a copy of respondent's letter to NASD.

7. In August of 1985 NASD contacted respondent concerning whether or not he in fact was holding the original stock certificate. At such time respondent realized the brokerage firm president had forwarded a copy of respondent's letter to NASD and he further discovered he had never received the original certificate.

8. It was later learned the stock certificate had been altered by brokerage firm principals. As a result of respondent's conduct and that of the principals, the brokerage firm was allowed to stay in business during a period of time it did not meet critical minimum financial requirements.

9. The parties stipulated the above conduct violated DR 1–102(A)(4) and DR 7–102(A)(5). The former provision has been set out above. The latter provides as follows:

(A) In his representation of a client, a lawyer shall not:

(5) Knowingly make a false statement of law or fact.

10. Alleged violations of DR 7–102(B)(1) and DR 7–102(A)(7) contained in Count IV were agreed to be dismissed via the stipulation.

In addition to the above stipulations the parties also submitted stipulations as to agreed mitigation and an agreed recommendation for discipline. The stipulations as to mitigation are as follows:

## AGREED MITIGATION

1. That respondent has been a member of the Oklahoma Bar Association since 1977, and has not been previously disciplined.

2. That a substantial part of respondent's practice is devoted to pro bono work.

3. That respondent was suffering from manic depression and self-treating the depression with alcohol. Respondent is now under a physician's care for manic depression.

Although not part of the stipulation on mitigation we note respondent indicated at the hearing before the PRT that he was a fighter pilot during the Viet Nam War and that he is active with Amnesty International and the Tulsa Metropolitan Ministries. We also note the record indicates respondent sought professional help for his problems and he stopped drinking on his own for approximately eighteen months.

The stipulations as to recommended discipline are as follows:

## AGREED RECOMMENDATION FOR DISCIPLINE

1. That John T. Hall, respondent, be suspended from the practice of law in the State of Oklahoma for a period of one (1) year.

2. That respondent will voluntarily suspend himself for a period of one year to begin August 15, 1989, and to run through August 14, 1990.

3. That the parties request the PRT recommend to the Oklahoma Supreme Court that the Court date any order in the above-referenced matter to be effective August 15, 1989.

4. Additionally, respondent shall be liable for the costs of this disciplinary proceeding and such costs shall be paid by respondent as a condition of reinstatement to the practice of law.

Our review of the matter indicates that respondent acknowledged the truth of the stipulations to the Trial Panel. Under the circumstances of this case, in light of the conduct involved and the mitigation, we find the recommendation of discipline in the form of a one (1) year suspension to be appropriate.

IT IS THEREFORE ORDERED:

That the Proposed Stipulations of Fact and Conclusions of Law with Agreed Recommendation for Discipline, be hereby approved and, in accordance therewith, respondent, John T. Hall, is suspended from the practice of law for a period of one (1) year, said suspension to commence running on August 15, 1989.

Further, respondent is to furnish to this Court no later than fifteen (15) days after the entry of this Order Imposing Discipline a verified statement under penalty of perjury that he ceased all practice of law on or before August 15, 1989 and respondent must fully comply with Rule 9.1 of the Rules Governing Disciplinary Proceedings, 5 O.S.1981, Ch. 1, App. 1–A.

At the conclusion of respondent's one (1) year suspension, respondent will follow the provisions of Rule 11.8, Rules Governing Disciplinary Proceedings, 5 O.S.1981 Ch. 1, App. 1–A, concerning reinstatement.

Respondent will pay all costs of the action herein in the total amount of four hundred nine dollars and eighty-four cents ($409.84).

All the Justices concur.