IN THE MATTER OF THE REINSTATEMENT OF HUTSON



 

 
 
 
 
 
 Skip to Main Content
 Accessibility Statement
 
 
 
 
 
 Help
 Contact Us
 
 
 
 
 e-payments
 Careers
 
 
 
 
 
 
 
 
 
 
 
 Home
 Courts
 Decisions
 Programs
 News
 Legal Research
 Court Records
 Quick Links
 
 
 
 
 
 OSCN Found Document:IN THE MATTER OF THE REINSTATEMENT OF HUTSON

 

 
 



 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 

 
 IN THE MATTER OF THE REINSTATEMENT OF HUTSON
2019 OK 32
Case Number: SCBD-6672
Decided: 04/30/2019
THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2019 OK 32, __ P.3d __

 

NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL. 
 


 


In The Matter of the Reinstatement of Janet Bickel Hutson to Membership in the Oklahoma Bar Association, and to the Roll of Attorneys

JANET BICKEL HUTSON, Petitioner,
v.
OKLAHOMA BAR ASSOCIATION, Respondent.

BAR REINSTATEMENT PROCEEDING

¶0 The petitioner, Janet Bickel Hutson, pled guilty to criminal charges of offering false evidence, possession of a controlled dangerous substance and perjury. She received a deferred sentence of five (5) years. Hutson resigned from the Oklahoma Bar Association pending disciplinary proceedings on July 3, 2007, following an interim suspension. The Court struck her name from the roll of Oklahoma attorneys on September 24, 2007. Hutson petitioned for reinstatement on July 25, 2018. After a reinstatement hearing, the Professional Responsibility Tribunal determined that Hutson had not established by clear and convincing evidence that she had met all of the requirements for reinstatement. Upon de novo review, we hold that the attorney may not be reinstated at this time. However, if she succeeds in following our proposed recommendations, she should re-apply in six months. The attorney is hereby denied reinstatement and is ordered to pay the remaining costs of $1,999.50.

REINSTATEMENT DENIED;
COSTS IMPOSED.

Sheila J. Naifeh, Tulsa, Oklahoma, for Petitioner.

Tracy Pierce Nester, Assistant General Counsel, Oklahoma Bar Association, Oklahoma City, Oklahoma, for Respondent.


KAUGER, J.:
¶1 After the petitioner, Janet Bickel Hutson, (petitioner/Hutson) pled guilty to criminal charges of offering false evidence, possession of a controlled dangerous substance and perjury, the Court struck her name from the roll of attorneys on September 25, 2007. On July 25, 2018, Hutson petitioned for reinstatement. Upon a de novo review,[1] we hold that the petitioner did not meet the burden of proof necessary for reinstatement. Nevertheless, we propose recommendations to pursue her commitment to recovery of substance abuse and financial issues and suggest that she re-apply after at least six months of following the recommendations. She is also ordered to pay remaining costs of $1999.50.[2]
FACTS AND PROCEDURAL BACKGROUND
¶2 Hutson, a former police officer, became a member of the Oklahoma Bar Association on September 25, 1991, after graduating from law school. Her post-law school graduation work consisted primarily as an attorney in the District Attorney's office covering various counties including Muskogee, Cherokee, Wagoner, Adair, and Sequoyah. She also worked in private practice, and was appointed as a special prosecutor by the Oklahoma Attorney General in 1995 to prosecute the notorious Baby Luke case in Pittsburg County.
¶3 According to the petitioner, she suffered from anorexia off and on her entire adult life. In the early 2000's, her life began to tailspin and she started abusing cocaine. She attributed her tailspin to her traumatic childhood due to her father's alcoholism and criminal behavior, her deteriorating marriage, depression, anxiety, anorexia, her youngest son joining the military and being deployed to Iraq, and her youngest granddaughter being born with spina bifida. In 2003, she sought treatment in Arizona for anorexia, post-traumatic stress disorder, and depression, and in 2005, she took an overdose of Xanax.
¶4 The incident giving rise to her suspension occurred on February 22, 2005, when she attended a drug bust at a search scene. While at the scene, she placed a bag of methamphetamine in her purse. After the drug scene, investigators reported that drugs were missing from the crime scene, Hutson admitted that she discovered the missing drugs in her purse. She insisted that they stuck to the rubber gloves that she was wearing when she took them off and put them in her purse. She adhered to this story, testifying before the Multicounty Grand Jury on September 22, 2005.
¶5 As the investigation continued, it became apparent that the petitioner took the drugs from the scene, and altered the contents of the bag.[3] Consequently, she faced a perjury charge in Oklahoma County, and charges of offering false evidence and possession of controlled dangerous substance in Wagoner County, Oklahoma.[4] On September 8, 2006, she pled guilty to the charges, received a five (5) year deferred sentence, and paid $3500.00 in each county for a total of $7000.00 in fines and court costs.
¶6 Thereafter, the Bar Association initiated a grievance against the petitioner resulting from her guilty pleas. On March 26, 2007,[5] the Court issued an order of interim suspension, effective immediately pursuant to Rule 7.3 of the Rules Governing Disciplinary Proceedings.[6] While disciplinary proceedings were pending, the petitioner submitted a resignation on July 3, 2007, waiving any right to explain her conduct or submit mitigating evidence. She also agreed to make no application for reinstatement prior to the expiration of five years. The Court issued an order approving her resignation on September 25, 2007.
¶7 On September 14, 2011, the petitioner's criminal records were ordered expunged in both Wagoner and Oklahoma Counties. Since her resignation, Hutson has had several jobs, primarily in law offices, as a paralegal/legal assistant or an office manager. She denies having practiced law, giving legal advice, or having any clients since her resignation. She offers affidavits from several court clerks who affirm that they have not received any evidence that Hutson has practiced law since March of 2007.
¶8 In 2016, Hutson filed a Petition for Reinstatement, but voluntarily withdrew it after she became overwhelmed with the process, realized she was not ready for reinstatement, and decided that she needed independent attorney representation which she could not afford. She submitted another Petition for Reinstatement on July 25, 2018. The Professional Responsibility Tribunal (PRT) held a reinstatement hearing on October 17th and 18th, 2018.
¶9 At the hearing, ten people testified, with sixty exhibits admitted. The first to testify (via telephone) was Penny Ross Miller, a licensed professional counselor. The counselor also provided a letter dated October 5, 2018, which verified that the petitioner began weekly therapy sessions on September 21, 2018. The letter noted that Hutson had attended three counseling sessions, and had agreed to maintain weekly sessions for the foreseeable future. The counselor's testimony expanded on the letter and identified an additional counseling session that Hutson had attended.
¶10 Another client of the counselor had recommended that Hutson seek counseling and attend AA meetings. Hutson maintains that she has remained free of illegal substances for 13 years and had recently completely abstained from alcohol. The recent counseling appears to be the only counseling the petitioner has had since her resignation in 2007. The counselor encouraged AA attendance if any type of narcotic abuse was an issue.
¶11 Next, District Judge Jeffrey Payton, attorney Brett Smith, and attorney Amy McFarland testified in support of her reinstatement regarding the many years they have known petitioner. They believe in the petitioner's moral character, legal skills and knowledge of the law, and they all supported reinstatement. Smith also sponsored the Muskogee County Bar Association's unanimous resolution of support for Hutson's reinstatement. Hutson's current employer, attorney William Connor II, also praised her current moral character and described her current work product as spectacular. Additionally, the petitioner offered seven letters from other judges and lawyers who supported her reinstatement.
¶12 Emett Hutson, the petitioner's husband, testified that he had never witnessed her using illegal drugs or abusing alcohol and that she had stopped drinking completely after agreeing to participate in Lawyers Helping Lawyers. The petitioner's son, Master Sergeant Christopher Bickel, also supported his mother, noting that she was remorseful, accepting of responsibility, and that she had high moral character. He described her as having a much better work-life balance than she did at the time she lost her license.
¶13 Clint Johnson, who served as a supervising agent District 27 Drug Task Force at the time of the incident giving rise to Hutson's resignation, gave additional details about the drug raid. He testified that the bag of methamphetamine that Hutson returned was not of the same type/quality that she took from the crime scene. He also testified that Hutson told him he should tell anyone that asked that she did not intentionally take the drugs. Ultimately, all of the drug charges against the individuals who were arrested in the raid were dropped due to the tainted evidence.
¶14 The Bar's investigator, Jamie Lane, testified regarding her investigation of the petitioner. She identified some omissions in her first petition for reinstatement such as an arrest in Arkansas in 2011 for public intoxication as well as two civil actions which had been filed against Hutson. She indicated that the two civil actions were also not disclosed in the second petition for reinstatement and that information regarding Hutson's student loan debt had not been updated since 2015. She confirmed that the petitioner had no outstanding and unpaid monetary obligations to the Bar.
¶15 Finally, the petitioner testified, recounting her employment history, education, and the events which led to her criminal prosecution. She testified that she submitted to hair follicle tests in 2005, 2007, 2009, and on September 26, 2018, at the request of the Bar, and all of those tests were negative for drugs. At the Bar's suggestion she reached out to Lawyers Helping Lawyers, and attends therapy. She has attended 17 sessions of AA, contacts her Lawyers Helping Lawyers mentor three times a week, attends a Lawyers Helping Lawyers meeting once a month, and consumes no intoxicants.
¶16 Hutson kept current on the law by reading Bar Journals since 2008 and completing 86.5 hours of continuing legal education in 2018. She accepts full responsibility for everything that has happened, but still maintains that she did not intentionally remove the drug evidence from the scene. Nevertheless, she also confirms that she was under the influence of drugs at the time the events occurred. Hutson also explained her financial situation as well as the Arkansas public citation and the two civil lawsuits she omitted in the reinstatement application.
¶17 Hutson testified that she did not intentionally omit the Arkansas public intoxication and two civil lawsuits, but that it was an oversight. She also stated that when the Bar questioned her about them, she readily admitted them. The public intoxication occurred in the summer of 2011, as a result of her being a passenger on a motorcycle driven by her intoxicated husband.
¶18 The omitted lawsuits, and additional lawsuits corroborate the petitioner's account that her life was in a tailspin beginning in the early 2000's. For example, she was involved in a medical debt collection in 2000, a foreclosure in 2002, a small claims indebtedness in 2003, a malpractice case in 2003 which was dismissed, a collection for a loan she co-signed for her son in 2004, a default loan in 2005, a small claims breach of contract in 2007, a small claims indebtedness in 2008, a tax collection in 2008, public intoxication in 2009, a medical debt collection in 2010, and two minor traffic citations in 2013 (one of which was dismissed). Nothing significant has been filed since 2010, almost a decade ago.
¶19 At the time of the hearing, the petitioner also had incurred student loan debt, tax liability to the Oklahoma Tax Commission (OTC), and to the Internal Revenue Service (IRS). She owed $7,240.87 plus penalties and interest and fees for tax years 2009 through 2014 to the OTC, $11,431.18 to the IRS, and $183,000.00 in student loans. She explained her tax liabilities were the result of a former employer's refusal to provide W-2 forms.
¶20 On December 18, 2018, the PRT filed its report and recommendation. It concluded that Hutson had not established by clear and convincing evidence that she met all of the requirements for reinstatement. The PRT unanimously recommended that Hutson not be reinstated, but that she re-apply after completing a contract with Lawyers Helping Lawyers, continuing to receive treatment by mental health professionals, attending a twelve step program and demonstrating consistent servicing of her financial obligations. The cause was assigned on January 29, 2019, and the final briefs were completed on February 20, 2019.
THE PETITIONER DID NOT MEET THE BURDEN OF PROOF
NECESSARY FOR REINSTATEMENT. 
¶21 The Bar Association argues that the petitioner failed to prove she met qualifications for reinstatement. The petitioner insists that she has. It is the responsibility of this Court is to gauge a lawyer's fitness to practice law, with the purpose of safeguarding the interest of the public, of the courts, and of the legal profession.[7] The nondelegable, constitutional responsibility to regulate the practice and the ethics, licensure, and discipline of legal practitioners is solely vested in this Court.[8]
¶22 We explained the rationale for this responsibility in In re Integration of State Bar of Oklahoma, 1939 OK 378, 95 P.2d 113 we noted that the regulation of the practice of law is a judicial function. An inherent power of the judiciary is to ultimately determine the qualifications of those to be admitted to practice in its courts, for assisting in its work and to protect itself in this respect from the unfit. We said:
¶5 There is no express grant of power in the Constitution of Oklahoma giving to any of the three departments of government the right to define and regulate the practice of law, but the very fact that the Supreme Court was created by the Constitution gives it the right to regulate the matter of who shall be admitted to practice law before the Supreme Court and inferior courts, and also gives it the right to regulate and control the practice of law within its jurisdiction.
¶6 The Supreme Court has the right to exercise all powers fundamental to its existence, and it is fundamental that it has the inherent power to regulate admission to the bar, and to control and regulate the practice of law of those admitted to the bar. . . .
¶23 In Ford v. Board of Tax-Roll Corrections, 1967 OK 90, ¶21, 431 P.2d 423 we noted that "[a]ttorneys are officers of the court and the authorities holding them to be such are legion. They are in effect an important part of the judicial system of this state. It is their duty honestly and ably to aid the courts in securing an efficient administration of justice. The practice of law is so ultimately connected and bound up with the exercise of judicial power in the administration of justice that the right to define and regulate its practice naturally and logically belongs to the judicial department of our state government." We also said:
. . . [A]s to the respective positions of the Legislature and of the Supreme Court under the Constitution, in respect to regulating and controlling the Bar, the legislative power may enact statutes respecting the proper administration of justice and the organization of the Bar, so long as they are helpful to those ends. However, the responsibility for the due administration of justice and the regulation and control of the Bar is vested in the Supreme Court by Art. 7, § 1 , of the Constitution, and is protected against encroachment by Art. 4, § 1 , of the Constitution. It is also clear that the power to organize, regulate and control the Bar for the administration of justice is inherently vested in the Supreme Court and, in case of invasion upon this power, the Court's power is superior under the Constitution.
¶24 Without a doubt, the petitioner's conduct which gave rise to her resignation involved substance abuse and/or illegal drug use. This is not a Rule 10.11, Rules Governing Disciplinary Proceedings, 5 O.S. 2011 Ch. 1, App. 1-A, case wherein the petitioner was immediately determined to be incapable of practicing law and suspended due to that substance abuse.[9] Rather, she was immediately suspended due to her criminal charges which related to her illegal drug use.[10]
¶25 Yet, much like a Rule 10 proceeding, substance abuse is at the forefront of the discussion. Rule 10 directs that the procedures, insofar as they are applicable, for resuming the practice of law after the removal of a personal incapacity, are the same as the procedures as those provided in Rule 11,[11] following suspension upon disciplinary grounds.[12] It makes no difference whether the suspension resulted from an interim suspension for personal incapacity[13] or from a suspension pursuant to a Rule 10 proceeding where no interim suspension was sought.[14]
¶26 In requesting reinstatement, the lawyer must establish by clear and convincing evidence that: 1) the condition is no longer a threat rendering the applicant personally incapable of practicing law; and 2) the applicant's conduct will conform to the high standards required of a member of the Oklahoma Bar. Further, the applicant must present stronger proof of qualifications than one seeking admission for the first time.[15] Much like a Rule 10 proceeding, one of our objectives when considering reinstatement is to minimize any potential risk of harm to the public. In that vein, the focus is not exclusively on the past; rather the focus is on the practitioner's present condition and its future consequences.[16]
¶27 A practitioner's incapacity, whether past or present, is important in crafting solutions which accord with the law's imperative of ensuring protection of the public from substandard lawyers.[17] One case particularly insightful to this cause is State ex. rel. Okla. Bar Ass'n. v. Albert, 2007 OK 31, 163 P.3d 527. In Albert, the attorney agreed to an interim suspension and admitted that he was incapable of practicing law. We suspended the attorney until further order of the Court.
¶28 The suspended attorney sought in-patient treatment for almost one month for both alcohol and cocaine addictions. The attorney's prognosis on discharge was "guarded to fair." He agreed to random drug tests and had submitted two tests both of which were negative. The attorney completed a six-week relapse prevention program, and attended Alcoholics Anonymous and participated in Lawyers Helping Lawyers. At the time of the first reinstatement hearing, only seven weeks had passed since the attorney was released from treatment, and only thirteen and a half weeks had passed by the time the attorney filed the petition for reinstatement.
¶29 To support reinstatement, the attorney presented testimony from a trial judge, a defense lawyer, a drug counselor, and a friend from a treatment center all of whom agreed that the attorney needed safeguards in place such as counseling, monitoring, random urinalysis, attendance at counseling and Lawyers Helping Lawyers to be able to cope and function in daily life. The Bar Association also spoke to the same effect on the attorney's behalf. It was undisputed that prior to affliction, the attorney was an excellent attorney and asset to the Bar. The attorney's own clear and convincing evidence showed that the attorney remained incapable of practicing law without assistance.
¶30 Furthermore, the attorney's conduct had adversely affected the legal matters of several clients, tarnished the image of the legal profession, and fostered and promoted a destructive lifestyle. Given the severity of the afflictions, the severity of the misconduct, the surrounding circumstances, and the particularly short time frame in which this cause was brought seeking reinstatement, we were not convinced that the attorney had met the burden placed upon him by the Rules Governing Disciplinary Proceedings and the precedents set by this Court in regard to those rules.
¶31 The Bar Association had recommended reinstatement with certain conditions imposed.[18] We did not follow the Bar Association's recommendation because our research did not reflect any precedent for such a recommendation. Instead, our previous cases were contra -- particularly when one considered the detriment to the clients, the seriousness of the conduct, the extent of addiction, and, in particular, the length of time in which the attorney sought help in controlling the addiction.[19]
¶32 We noted that we look at several criteria for reinstatement when a lawyer has been either disbarred or has resigned pending disciplinary proceedings while holding to our primary duty of safeguarding the public, the courts, and the legal profession.[20] The factors include: present moral fitness; consciousness of the wrongfulness; disrepute brought on the profession; extent of rehabilitation; seriousness of the original misconduct; conduct subsequent to discipline; time elapsed since the original discipline; petitioner's character, maturity, and experience; and present competence in legal skills.[21] While all the factors are relevant when the suspension results from an incapacity to practice law, those weighing most heavily to the incapacity are: 1) the extent of rehabilitation of the affliction attributable to the incapacity; 2) the conduct subsequent to the suspension and treatment received for the condition; and 3) the time which has elapsed since the suspension.
¶33 We remanded that cause to the PRT to afford the attorney to show that: 1) the attorney was no longer threatened by the condition which rendered the attorney personally incapable of practicing law; 2) the attorney's conduct would conform to the high standards required of a member of the Oklahoma Bar; and 3) the attorney presented stronger proof of qualifications than one seeking admission for the first time. We said that to be reinstated, the attorney must make a showing that over a significant amount of time, he maintained sobriety and refrained from abusing drugs or alcohol; passed random drug tests; attended Alcoholics Anonymous meetings; sought necessary counseling; and participated in Lawyers Helping Lawyers; diligently pursued sobriety; and met the other factors necessary for reinstatement.
¶34 Today, we follow Albert, supra. Caselaw since Albert involving attorneys engaged in similar behavior to the petitioner has resulted in reinstatement being granted,[22] and, in some cases, denied.[23] Furthermore, other cases in which drugs or alcohol were not involved, but in which the conduct was as serious as the petitioner's misconduct have also resulted in reinstatement,[24] with a few exceptions.[25] Here, more than a decade has passed before seeking reinstatement. However, given the severity of her afflictions, and her misconduct, the surrounding circumstances, and the fact that a criminal case was affected by her behavior, we are not convinced that she met the burden placed upon her by the Rules Governing Disciplinary Proceedings and the precedents set by this Court in regard to those rules at this time.
¶35 Although she had begun counseling, she had only attended three sessions at the time of her application for reinstatement. We recommend that she reapply for reinstatement in six months after doing the following: 1) maintain sobriety, and refrain from abusing prescribed medications or illegal drugs; 2) submit to random drug testing and pass; 3) abide by her Lawyers Helping Lawyers Contract, continue counseling, and have her counselor submit monthly progress reports of her continued care and treatment; 4) follow her counselor's recommendations regarding attendance of Twelve Step Program meetings; and 5) continue to make regular payments to her tax and student loan obligations.
CONCLUSION
¶36 The petition for reinstatement of Janet Bickel Hutson is denied. On application of the Oklahoma Bar Association, costs of $1,999.50 are assessed against her. The application to assess costs is unopposed, and the petitioner has not requested any type of payment accommodation. Consequently, the costs are to be paid by order of this Court within ninety (90) days after this opinion is issued.
REINSTATEMENT DENIED;
COSTS IMPOSED.

GURICH, C.J., KAUGER, WINCHESTER, EDMONDSON, REIF, JJ., concur.

COLBERT, J., concurs specially.


 
COLBERT, J., concurring specially:
I would admit her at the present time. 
 

DARBY, V.C.J., and COMBS, J., concur in part and dissent in part.

FOOTNOTES

[1] State ex rel. Oklahoma Bar Ass'n v. Phillips, 2002 OK 86, ¶2, 60 P.3d 1030; State ex rel. Oklahoma Bar Ass'n v. Erickson, 2001 OK 66, ¶14, 29 P.3d 550; State ex rel. Oklahoma Bar Ass'n v. Israel, 2001 OK 42, ¶13, 25 P.3d 909; State ex rel. Oklahoma Bar Ass'n v. Smolen, 2000 OK 95, ¶7, 17 P.3d 456.

[2] On March 29, 2019, the petitioner filed an affidavit of payment of costs, verifying that she had paid the court reporter in full and some $492.38 in miscellaneous costs requested by the Bar Association, leaving only $1999.50 remaining for the Multicounty Grand Jury Transcripts. Rule 6.13, Rules Governing Disciplinary Proceedings, 5 O.S. 2011, Ch.1, App. 1-A provides in pertinent part:
Within thirty (30) days after the conclusion of the hearing, the Trial Panel shall file with the Clerk of the Supreme Court a written report which shall contain the Trial Panel's findings of fact on all pertinent issues and conclusions of law (including a recommendation as to discipline, if such is found to be indicated, and a recommendations as to whether the costs of the investigation, record and proceedings should be imposed on the respondent) . . .
Rule 6.16, Rules Governing Disciplinary Proceedings, 5 O.S. 2011 Ch. 1, App. 1-A provides in pertinent part:
The costs of investigation, the record, and disciplinary proceedings shall be advanced by the Oklahoma Bar Association (or the Professional Responsibility Commission, if provision therefore has been made in its budget). Where discipline results, the cost of the investigation, the record, and disciplinary proceedings shall be surcharged against the disciplined lawyer unless remitted in whole or in part by the Supreme Court for good cause shown. . .

[3] According to the petitioner, she began to pour the drugs into the toilet before she decided to return the baggy. According to the investigators, the missing drugs were replaced with a lower quality drug.

[4] On January 30, 2006, the Multicounty Grand Jury issued an indictment against the petitioner for perjury because she testified that she had never purchased, received or otherwise obtained illegal controlled dangerous substances for her own personal use. It was alleged that multiple deliveries of drugs were made to the petitioner at the Muskogee County Courthouse while serving as a District Attorney, at her private law office while in private practice, and at the Cherokee County Courthouse while serving as a District Attorney. The Multicounty Grand Jury issued another indictment on January 31, 2006, against the petitioner for possession of controlled dangerous substance and another indictment on March 29, 2006, for offering false evidence and possession of controlled dangerous substance.

[5] The order is dated March 26, 2007. It was filed on the Office of Chief Justice Bar Docket the same day and filed in the Supreme Court Bar Docket on March 27, 2007.

[6] Rule 7.3, Rules Governing Disciplinary Proceedings, 5 O.S. Supp. 2007 Ch. 1, App. 1-A provides:
Upon receipt of the certified copies of Judgment and Sentence on a plea of guilty, order deferring judgment and sentence, indictment or information and the judgment and sentence, the Supreme Court may by order immediately suspend the lawyer from the practice of law until further order of the Court. In an order of suspension the Court may direct the lawyer to file a statement, to show cause, if any the lawyer has, why the order of suspension should be set aside. Upon good cause shown, the Court may set aside its order of suspension when it appears to be in the interest of justice to do so, due regard being had to maintaining the integrity of and confidence in the profession. . . .

[7] State ex rel. Oklahoma Bar Ass'n v. Bolton, 1995 OK 98, ¶15, 904 P.2d 597; State ex rel. Oklahoma Bar Ass'n v. Donnelly, 1992 OK 164, ¶14, 848 P.2d 543; State ex rel. Oklahoma Bar Ass'n v. Colston, 1989 OK 74, ¶20, 777 P.2d 920; State ex rel. Oklahoma Bar Ass'n v. Moss, 1983 OK 104, ¶12, 682 P.2d 205.

[8] State ex rel. Oklahoma Bar Ass'n v. Holden, 1995 OK 25, ¶1, 895 P.2d 707; State ex rel. Farrant, 1994 OK 13, ¶8, 867 P.2d 1279; Tweedy v. Oklahoma Bar Ass'n, 1981 OK 12, ¶4, 624 P.2d 1049.

[9] Rule 10 et seq. Rules Governing Disciplinary Proceedings, 5 O.S. 2011 Ch. 1, App. 1-A. Rule 10.5, Rules Governing Disciplinary Proceedings, 5 O.S. 2011 Ch. 1, App. 1-A, provides:
Whenever a proceeding charging that a lawyer is personally incapable of practicing law is based upon conduct or neglect of duty in respect to the affairs of any client, the complaint must also allege specifically any such conduct which would justify the imposition of discipline, so that the Professional Responsibility Tribunal may hear evidence thereon, and in its report shall make findings and a recommendation as to whether the lawyer should be disciplined or whether he should be found personally incapable of practicing.
1Ch. 1, App. 1-A, provides:

The report of the Trial Panel of the Professional Responsibility Tribunal shall be made to the Chief Justice for proceedings in the Supreme Court as in disciplinary actions. If the Court finds the respondent personally incapable of practicing law, he shall be formally suspended from the practice of law until the further order of the Court.

[10] Rule 7.3, Rules Governing Disciplinary Proceedings, 5 O.S. Supp. 2007 Ch. 1, App. 1-A, see note 6, supra.

[11] Rule 11 et seq., Rules Governing Disciplinary Proceedings, 5 O.S. 2011 Ch. 1, App. 1-A, governs the reinstatement process.

[12] Rule 10.11, Rules Governing Disciplinary Proceedings, 5 O.S. 2011 Ch. 1, App. 1-A, provides in pertinent part:
(a) Procedures for reinstatement of a lawyer suspended because of personal incapacity to practice law shall be, insofar as applicable, the same as the procedures for reinstatement provided in Rule 11 following the suspension following disciplinary grounds. . . .

[13] Rule 6.2A, Rules Governing Disciplinary Proceedings, 5 O.S. 2101 Ch. 1, App. 1-A.

[14] Rule 10.5, Rules Governing Disciplinary Proceedings, 5 O.S. 2011 Ch. 1, App. 1-A, see note 9, supra.

[15] Rule 11.4 Rules Governing Disciplinary Proceedings, 5 O.S. 2011 Ch. 1, App. 1-A, provides:
An application for reinstatement must establish affirmatively that, if readmitted or if the suspension from practice is removed, the applicant's conduct will conform to the high standards required of a member of the Bar. The severity of the original offense and the circumstances surrounding it shall be considered in evaluating an application for reinstatement. The burden of proof, by clear and convincing evidence, in all such reinstatement proceedings shall be on the applicant. An applicant seeking such reinstatement will be required to present stronger proof of qualifications than one seeking admission for the first time. The proof presented must be sufficient to overcome the Supreme Court's former judgment adverse to the applicant. Feelings of sympathy toward the applicant must be disregarded. If applicable, restitution, or the lack thereof, by the applicant to an injured party will be taken into consideration by the Trial Panel on an application for reinstatement. Further, if applicable, the Trial Panel shall satisfy itself that the applicant complied with Rule 9.1 of these Rules.

[16] State ex rel. Oklahoma Bar Ass'n v. Adams, 1995 OK 17, ¶13, 895 P.2d 701.

[17] State ex rel. Oklahoma Bar Ass'n v. Carpenter, 1993 OK 86, ¶11, 863 P.2d 1123.

[18] The conditions or "stipulations" as they were referred to at the time were that the attorney: 1) maintain sobriety, and refrain from abusing prescribed medications or using any prescription medications without a doctor's written authorization; 2) submit to random drug testing and pass; 3) abide by the Lawyers Helping Lawyer's Contract and have a mentor, alcoholic anonymous sponsor, and counselor submit monthly progress reports of continued care and treatment; 4) attend alcoholic anonymous meetings; 5) follow the Bar Association's recommendations regarding law office practice and management; 6) enroll and attend counseling, treatment courses, or facilities as may be recommended; 7) diligently, competently, timely and professionally handle clients' cases and earn any fee for which was paid in advance; and 8) comply with all of the terms and conditions of probation or face immediate suspension or discipline.

[19] In some cases, a practitioner incapable of practicing law and engaged in neglectful conduct similar to Albert was suspended for two years and a day. For example, In State ex rel. Oklahoma Bar Association v. Adams, 1995 OK 17, ¶25, 895 P.2d 701, a practitioner whom the Court found incapable of practicing law under Rule 10 due to alcoholism was suspended for two years and a day for conduct charged in five grievances such as failure to prosecute a cross-petition, file response to summary judgment, and keep clients informed of case. Practitioner failed to appear in court, file timely pleadings and to show up prepared and with proper regard for personal appearance and hygiene.
Some cases involve suspension under Rule 10 which was later reinstated. In the Matter of Reinstatement of Rhoads, 2005 OK 53, 116 P.3d 187(Attorney who was suspended from the practice of law under Rule 10 in 1999 for mental illness was denied reinstatement in 2000 when his doctor testified that he was fit to practice law if he stayed on medication, continued to monitor blood levels and attended therapy. However, he was eventually reinstated in 2005 when he was able to prove by clear and convincing evidence that reinstatement was warranted.).
In other discipline or reinstatement cases Rule 10 was not involved, but drug or alcohol abuse was a part of the practitioner's lifestyle. In In the Matter of Reinstatement of Kenneth Van Todd, SCBD No. 5130, (The Court denied reinstatement to an attorney who pled guilty to six felonies stemming from a drug addiction and the explosion of his meth lab even though he had successfully completed 7 ½ years of probation.); In State ex rel. Oklahoma Bar Ass'n v. Beasley, 2006 OK 49, ¶49, 142 P.3d 419 (Alcoholic practitioner with 6 grievances involving failure to perform legal services, failure to communicate with clients and failure to refund unearned fees was suspended for two years and a day.); In State ex rel. Oklahoma Bar Ass'n v. Rogers, 2006 OK 54, ¶22, 142 P.3d 428, the Court recently suspended a practitioner for two years and a day for professional misconduct arising out of numerous alcohol-related felony and misdemeanor convictions. In the Matter of Reinstatement of Tully, 2004 OK 44, ¶11, 92 P.3d 693 (Attorney who was suspended in 2001 for two years and a day for misappropriating funds and pled no contest for felonious possession with intent to distribute a controlled dangerous substance and the possession of a firearm during a felony was reinstated in 2004 after the attorney demonstrated that he had reformed his lifestyle and had demonstrated a commitment to programs to assist him in overcoming his previous drug addition.); In re Reinstatement of Peveto, 2004 OK 95, ¶13, 105 P.3d 829 (Attorney who had maintained sobriety for over a decade and had not used drugs since disbarment denied reinstatement because he did not fully satisfy the civil judgments entered against him.); State ex rel. Oklahoma Bar Ass'n v. Giger, 2001 OK 96, ¶25, 37 P.3d 856 (Practitioner had six arrests for drug related vehicular crimes and failure to competently, diligently represent clients, and failure to respond to disciplinary inquiries State ex rel. Oklahoma Bar Association, v. Tully, 2000 OK 93, ¶24, 20 P.3d 813 (Practitioner who admitted use of methamphetamine and who misappropriated funds, and had felony and misdemeanor convictions was suspended for two years and a day.). In the Matter of Reinstatement of Dennison, 1996 OK 24, ¶16, 913 P.2d 1315 (Attorney suspended in 1992 after pleading nolo contendere to two counts of making a false statement to a federally insured financial institution reinstated in 1996 after showing sobriety, regular attendance of alcoholics anonymous, working with Lawyers Helping Lawyers.) In the Matter of Reinstatement of Pierce, 1996 OK 65, ¶17, 919 P.2d 422 (Criminal defense attorney who resigned in 1989 with four counts of professional misconduct against him and an arrest and charges resulting from thirteen drug-related counts was denied reinstatement in 1996 because he couldn't prove rehabilitation, good moral character, and that he timely notified clients that he could not represent them.); State ex rel. Oklahoma Bar Ass'n v. Briery, 1996 OK 46, ¶15, 914 P.2d 1046 (Practitioner suspended two years and a day for failing to appear in court, failing to notify clients, and improper use of funds, and writing insufficient checks. By the time discipline was imposed, the practitioner had undergone treatment and had remained sober for a substantial period of time.); In the Matter of Reinstatement of Wright, 1995 OK 128, ¶22, 907 P.2d 1060 (Practitioner reinstated in 1995 after suspension upon felony conviction for distributing cocaine in 1988 because he was not a trafficker or dealer, and no evidence that his use of illegal substances affected his representation of clients. He also underwent regular drug testing for 68 months from 1987 to 1992 with no positive results for any illegal drugs.); State ex rel. Oklahoma Bar Ass'n v. Willis, 1993 OK 138, ¶16, 862 P.2d 1211 (Practitioner convicted of obtaining controlled substance by misrepresentation warranted suspension for 15 months.); State ex rel. Oklahoma Bar Ass'n v. Wright, 1990 OK 45, ¶2, 792 P.2d 1171 (Attorney who pled guilty to one count of distributing cocaine to friends in a social setting was suspended from the practice of law for two years and one day.); State ex rel. Oklahoma Bar Ass'n v. Hall, 1989 OK 119, ¶37, 781 P.2d 821(One year suspension for neglect of legal matter and making false statements for attorney who treated depression with alcohol but stopped drinking for eighteen months.); State ex rel. Oklahoma Bar Ass'n v. Thompson, 1989 OK 123, ¶13, 781 P.2d 824 (Nine month suspension for attorney convicted for possession of marijuana.); In the Matter of Reinstatement of Kamins, 1988 OK 32, ¶24, 752 P.2d 1125 (Alcoholic attorney who resigned in 1982 pending six formal grievances relating to commingling funds was denied reinstatement in 1998 despite his recovery for failure to meet burden of proof in part because he failed to accept the blame for his actions and his alcoholism and failed to make restitution.); State ex rel. Oklahoma Bar Ass'n v. Ingmire, 56 O.B.J. 2082 (1985) (Practitioner who was convicted of a misdemeanor for simple possession of cocaine was suspended for three years.).
In State ex rel Oklahoma Bar Ass'n v. Armstrong, 1992 OK 79, ¶1 , 848 P.2d 538, we declined to impose discipline for a practitioner who was convicted of a second offense of driving under the influence because, following the incident, he had not taken a drink in over six years, had undergone extensive rehabilitation, and had been a model of rehabilitation to others.
In some cases, where the client neglect was either minimal or non-existent or the attorney failed to cooperate with the disciplinary proceedings the Court has issued discipline for less than six months or public censures. State ex rel Oklahoma Bar Ass'n v. Burns, 2006 OK 75, ¶35, 145 P.3d 1088 (Six month suspension for driving while intoxicated or under influence of alcohol.); State ex rel Oklahoma Bar Ass'n v. Aston, 2003 OK 101, ¶21, 81 P.3d 676 (Six month suspension for possession of marijuana.); State ex rel Oklahoma Bar Ass'n v. Hogue, 1995 OK 64, ¶2, 898 P.2d 153 (Six month suspension for false statement after denying use of drugs and failing drug test and pleading guilty to driving under influence and transporting open container.); State ex rel Oklahoma Bar Ass'n v. Carpenter, 1993 OK 86, ¶19, 863 P.2d 1123 (Six month suspension for attorney with alcohol problems with counts of lending money to clients and commingling funds, failure to keep proper records and failure to deliver funds promptly.); State ex rel Oklahoma Bar Ass'n v. Perkins, 1992 OK 7, ¶9, 827 P.2d 168 (Six month suspension for attorney who had been attending treatment for substance abuse for 5 years and who failed to return calls and failed to file estate tax return while handling probate.); State ex rel Oklahoma Bar Ass'n v. Thompson, 1993 OK 144, ¶15, 864 P.2d 339 (90 day suspension for alcoholic attorney who neglected case and misrepresented facts of grievance.); State ex rel Oklahoma Bar Ass'n v. Arnett, 1991 OK 44, ¶10, 815 P.2d 170 (90 day suspension for attorney charged with possession of controlled substance.); State ex rel Oklahoma Bar Ass'n v. Garrett, 2005 OK 91, ¶30, 127 P.3d 600 (Public censure for alcoholic attorney who was arrested for sexual battery.); State ex rel Oklahoma Bar Ass'n v. Farber, 1993 OK 129, ¶1, 863 P.2d 1175 (Public censure for alcoholic who failed to promptly deliver funds, represent diligently, and keep client informed.); State ex rel Oklahoma Bar Ass'n v. Donnelly, 1992 OK 164, ¶22, 848 P.2d 543 (Public censure for alcoholic who lacked diligence, promptness and not keeping client informed.); State ex rel Oklahoma Bar Ass'n v. Blackburn, 1991 OK 35, ¶9, 812 P.2d 379 (Public censure for failure to file criminal brief and a conflict of interest in a divorce proceeding for attorney under substance abuse.); State ex rel Oklahoma Bar Ass'n v. Garvin, 1989 OK 97, ¶19, 777 P.2d 926 (Public censure for alcoholic who failed to file lawsuit and kept retainer, failed to inform client, and failed to respond to investigation.).

[20] In the Matter of Reinstatement of Fraley, 2005 OK 39, ¶35, 115 P.3d 842; In the Matter of Reinstatement of Pierce, 1996 OK 65, ¶16, 919 P.2d 422; In the Matter of Reinstatement of Cantrell, 1989 OK 165, ¶2, 785 P.2d 312; State ex rel. Oklahoma Bar Ass'n v. Raskin, 1982 OK 39, ¶15, 642 P.2d 262.

[21] In the Matter of Reinstatement of Rhoads, 2005 OK 53, ¶3, 116 P.3d 187; In the Matter of Reinstatement of Gassaway, 2002 OK 48, ¶3, 48 P.3d 805; In the Matter of Reinstatement of Kamins, 1988 OK 32, ¶20, 752 P.2d 1125.

[22] In re McLaughlin, 2018 OK 41, ¶21, 419 P.3d 239 (Alcoholic attorney charged in sixteen separate criminal cases, a majority of which were related to alcohol abuse was reinstated eleven years after suspension.); In re Blake, 2016 OK 33, ¶23, 371 P.3d 465 (Attorney charged with felony count of trafficking illegal drugs [methamphetamine] reinstated eight years after suspension and recovery.); In re Reinstatement of Pate, 2008 OK 24, ¶27, 184 P.3d 528 (Attorney impaired by drugs and alcohol committed serious crimes reinstated 9 years after suspension and recovery.); In re Johnston, 2007 OK 46, ¶36, 162 P.3d, 544 (Attorney who resigned following drug related federal criminal charges reinstated seven years later.).

[23] In re Reinstatement of Tunell, 2018 OK 82, ¶10, ___ P.3d ___ (Attorney who failed to show his serious problems with alcoholism, depression and anxiety had been properly treated denied reinstatement.).

[24] In re Reinstatement of Clayborne, 2017 Ok 93, ¶5, 406 P.3d 578 (Reinstatement of attorney who was disbarred based on conviction for subornation of perjury reinstated six years after suspension.); In re Reinstatement of Dobbs, 2001 OK 32, ¶19, 256 P.3d 52 (Attorney suspended for inducing secretary to falsely notarize an affidavit, lying under oath and concealing information reinstated seven years after suspension.); In re Reinstatement of Steward, 2010 OK 61, ¶7, 240 P.3d 666 (Attorney suspended for four years for tax liability reinstated.); In re Reinstatement of Jones, 2009 OK 1, ¶23, 203 P.3d 909 (Attorney discovered taking money from a guardianship account reinstated after nine years after resignation.); In re Reinstatement of Spilman, 2004 OK 79, ¶24, 104 P.3d 576 (Attorney convicted for bribery of a State's witness reinstated nine years after resignation.); In re Reinstatement of Cantrell, 1989 OK 165, ¶10, 785 P.2d 312 (Attorney convicted of attempted perjury by subornation reinstated two years after disbarment.).

[25] In re Reinstatement of Hird, 2008 OK 25, ¶13, 184 P.3d 535 (Attorney who pled guilty to bank fraud and money laundering denied reinstatement sixteen years after resignation.); In re Anderson, 2002 OK 84, ¶28, 51 P.3d 581 (District Attorney engaged in embezzlement denied reinstatement six years after resignation.); In re Hardin, 1996 Ok 115, ¶12, 927 P.2d 545 (Attorney who failed to file income tax returns for five years and still owed taxes denied reinstatement six years after resignation.); In re Reinstatement of Brown, 1996 OK 95, ¶20, 925 P.2d 44 (Attorney who resigned after embezzlement and forgery denied reinstatement six years after resignation.); In re Reinstatement of Smith, 65 O.B.A.J. 532 (Attorney indicted and convicted of 17 felonies denied reinstatement two years after resignation.).
 




 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Supreme Court Cases
 Cite
Name
Level

 2000 OK 95, 17 P.3d 456, 71 OBJ 3227, STATE ex. rel. OKLAHOMA BAR ASSN. v. SMOLEN
Discussed
 1988 OK 32, 752 P.2d 1125, Reinstatement of Kamins, Matter of
Discussed at Length
 1989 OK 74, 777 P.2d 920, State ex rel. Oklahoma Bar Ass'n v. Colston
Discussed
 1989 OK 97, 777 P.2d 926, State ex rel. Oklahoma Bar Ass'n v. Garvin
Discussed
 1989 OK 119, 781 P.2d 821, State ex rel. Oklahoma Bar Ass'n v. Hall
Discussed
 1989 OK 123, 781 P.2d 824, State ex rel. Oklahoma Bar Ass'n v. Thompson
Discussed
 1989 OK 165, 785 P.2d 312, Reinstatement of Cantrell, Matter of
Discussed at Length
 2000 OK 93, 20 P.3d 813, 71 OBJ 3095, STATE ex. rel. OKLAHOMA BAR ASSN. v. TULLY
Discussed
 1939 OK 378, 95 P.2d 113, 185 Okla. 505, In re INTEGRATION OF STATE BAR OF OKLAHOMA
Discussed
 1990 OK 45, 792 P.2d 1171, State ex rel. Oklahoma Bar Ass'n v. Wright
Discussed
 1991 OK 35, 812 P.2d 379, 62 OBJ 1296, State ex rel. Oklahoma Bar Ass'n v. Blackburn
Discussed
 1991 OK 44, 815 P.2d 170, 62 OBJ 1496, State ex rel. Oklahoma Bar Ass'n v. Arnett
Discussed
 1992 OK 7, 827 P.2d 168, 63 OBJ 284, State ex rel. Oklahoma Bar Ass'n v. Perkins
Discussed
 1992 OK 79, 848 P.2d 538, State ex rel. Oklahoma Bar Ass'n v. Armstrong
Discussed
 1992 OK 164, 848 P.2d 543, State, ex rel. Oklahoma Bar Ass'n v. Donnelly
Discussed at Length
 1993 OK 86, 863 P.2d 1123, 64 OBJ 2002, State ex rel. Oklahoma Bar Ass'n v. Carpenter
Discussed at Length
 1993 OK 129, 863 P.2d 1175, 64 OBJ 3094, State ex rel. Oklahoma Bar Ass'n v. Farber
Discussed
 1993 OK 138, 863 P.2d 1211, 64 OBJ 3290, State ex rel. Oklahoma Bar Ass'n v. Willis
Cited
 1993 OK 144, 864 P.2d 339, 64 OBJ 3370, State ex rel. Oklahoma Bar Ass'n v. Thompson
Discussed
 1994 OK 13, 867 P.2d 1279, 65 OBJ 459, State ex rel. Oklahoma Bar Assn. v. Farrant
Discussed
 2001 OK 32, 72 OBJ 1568, BANK ONE v. TANNER
Cited
 2001 OK 42, 25 P.3d 909, 72 OBJ 1498, STATE ex. rel. OKLAHOMA BAR ASSN. v. ISRAEL
Discussed
 2001 OK 66, 29 P.3d 550, 72 OBJ 1979, STATE ex. rel. OKLAHOMA BAR ASSN. v. ERICKSON
Discussed
 2001 OK 96, 37 P.3d 856, 72 OBJ 3401, STATE ex. rel. OKLAHOMA BAR ASSOCIATION v. GIGER
Discussed
 1967 OK 90, 431 P.2d 423, FORD v. BOARD OF TAX-ROLL CORRECTIONS
Discussed
 2002 OK 48, 48 P.3d 805, MATTER OF REINSTATEMENT OF GASSAWAY
Discussed
 2002 OK 64, 51 P.3d 581, IN THE MATTER OF REINSTATEMENT OF ANDERSON
Cited
 1995 OK 17, 895 P.2d 701, 66 OBJ 782, State ex rel. Oklahoma Bar Assn. v. Adams
Discussed at Length
 1995 OK 25, 895 P.2d 707, 66 OBJ 1108, State ex rel. Oklahoma Bar Assn. v. Holden
Discussed
 1995 OK 64, 898 P.2d 153, State ex rel. Oklahoma Bar Assn. v. Hogue
Discussed
 1995 OK 98, 904 P.2d 597, 66 OBJ 3063, State ex rel. Oklahoma Bar Ass'n v. Bolton
Discussed
 1995 OK 128, 907 P.2d 1060, 66 OBJ 3717, Reinstatement of Wright, Matter of
Discussed
 2002 OK 84, 60 P.3d 1024, STATE ex. rel. OKLAHOMA BAR ASS'N v. SHOFNER
Cited
 2002 OK 86, 60 P.3d 1030, STATE ex. rel. OKLAHOMA BAR ASSN. v. PHILLIPS
Discussed
 2003 OK 101, 81 P.3d 676, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. ASTON
Discussed
 2004 OK 44, 92 P.3d 693, IN THE MATTER OF THE REINSTATEMENT OF: TULLY
Discussed
 2004 OK 79, 104 P.3d 576, IN THE MATTER OF THE REINSTATEMENT OF SPILMAN
Discussed
 2004 OK 95, 105 P.3d 829, IN THE MATTER OF THE REINSTATEMENT OF PEVETO, JR.
Discussed
 2005 OK 39, 115 P.3d 842, IN THE MATTER OF THE REINSTATEMENT OF FRALEY
Discussed
 2005 OK 53, 116 P.3d 187, IN THE MATTER OF REINSTATEMENT OF RHOADS
Discussed at Length
 1996 OK 24, 913 P.2d 1315, 67 OBJ 690, Matter of Reinstatement of Dennison
Discussed
 2005 OK 91, 127 P.3d 600, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. GARRETT
Discussed
 2006 OK 49, 142 P.3d 410, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. BEASLEY
Cited
 1996 OK 45, 914 P.2d 1046, 68 OBJ 921, State ex rel. Oklahoma Bar Assn. v. Briery
Cited
 1996 OK 46, 914 P.2d 1046, 68 OBJ 921, State ex rel. Oklahoma Bar Assn. v. Briery
Cited
 2006 OK 54, 142 P.3d 428, STATE ex rel.OKLAHOMA BAR ASSOCIATION v. ROGERS
Discussed
 2006 OK 75, 145 P.3d 1088, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. BURNS
Discussed
 1996 OK 65, 919 P.2d 422, 67 OBJ 1833, In re Pierce
Discussed at Length
 2007 OK 31, 163 P.3d 527, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. ALBERT
Discussed
 2007 OK 46, 162 P.3d 922, IN THE MATTER OF THE REINSTATEMENT OF JOHNSTON
Cited
 2008 OK 24, 184 P.3d 528, IN THE MATTER OF THE REINSTATEMENT OF PATE
Discussed
 2008 OK 25, 184 P.3d 535, IN THE MATTER OF THE REINSTATEMENT OF HIRD
Discussed
 1996 OK 95, 925 P.2d 44, 67 OBJ 2786, In the Matter of the Reinstatement of Brown
Discussed
 1996 OK 115, 927 P.2d 545, 67 OBJ 3047, In the Matter of the Reinstatement of Hardin
Discussed
 2009 OK 1, 203 P.3d 909, IN THE MATTER OF THE REINSTATEMENT OF JONES
Discussed
 2010 OK 61, 240 P.3d 666, IN THE MATTER OF THE APPLICATION FOR REINSTATEMENT OF STEWART
Discussed
 2011 OK 32, 256 P.3d 52, IN THE MATTER OF THE REINSTATEMENT OF DOBBS
Cited
 2016 OK 33, 371 P.3d 465, IN THE MATTER OF THE REINSTATEMENT OF BLAKE
Discussed
 2017 OK 93, 406 P.3d 578, IN THE MATTER OF THE REINSTATEMENT OF CLAYBORNE
Discussed
 2018 OK 41, 419 P.3d 239, IN THE MATTER OF THE REINSTATEMENT OF MCLAUGHLIN
Discussed
 2018 OK 82, IN RE MATTER OF THE REINSTATEMENT OF TUNELL
Cited
 1981 OK 12, 624 P.2d 1049, Tweedy v. Oklahoma Bar Ass'n
Discussed
 1982 OK 39, 642 P.2d 262, State, ex rel., Oklahoma Bar Ass'n v. Raskin
Discussed
 1983 OK 104, 682 P.2d 205, State ex rel. Oklahoma Bar Ass'n v. Moss
Discussed


 
 








 
 
 
 

 
 

 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA